J-S64038-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| WALTER R. STINGER, SR. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| CHESAPEAKE APPALACHIA, LLC | |
| Appellee | No. 831 WDA 2014 |

Appeal from the Order Entered April 29, 2014
In the Court of Common Pleas of Greene County
Civil Division at No(s): AD-860-2010

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY GANTMAN, P.J.:            **FILED DECEMBER 15, 2014**

Appellant, Walter R. Stinger, Sr. ("Mr. Stinger"), appeals from the order entered in the Greene County Court of Common Pleas, which granted the petition of Appellee, Chesapeake Appalachia, LLC ("Chesapeake"), to enforce the parties' settlement agreement. We affirm.

The relevant facts and procedural history of this case are as follows. Mr. Stinger, as trustee of the Walter R. Stinger Living Trust, owned approximately four hundred and three (403) acres of land in the Aleppo Township, excluding the rights to the oil and gas within the property. Chesapeake held a lease to the oil and gas and operated gas wells on Mr. Stinger's property. On July 30, 2010, Mr. Stinger filed an action against Chesapeake for damages it caused to the surface of Mr. Stinger's property by operating the wells. Chesapeake filed an answer denying its activities

destroyed or devalued Mr. Stinger's property, and noting that Mr. Stinger had declined offers of compensation for surface disturbances to the property. During the course of discovery, the parties attempted to reach a settlement agreement in which Mr. Stinger would sell his property to Chesapeake and discontinue the litigation.

On July 30, 2013, Mr. Stinger's counsel ("prior counsel") wrote a letter to Mr. Stinger indicating that Chesapeake would offer Mr. Stinger a sum certain if Mr. Stinger made a "binding, written demand" for that amount ("settlement amount").[1] (Prior Counsel's Letter to Mr. Stinger, 7/30/13, at 1; R.R. at 162a). As an additional inducement for Mr. Stinger to settle, prior counsel offered to reduce the firm's fee by three percent. (*See id.*) The letter set forth that Mr. Stinger would pay attorney's fees in the amount of $200,000.00 if the property sold for the settlement amount. (*Id.*) Mr. Stinger signed the July 30, 2013 letter ("revised fee agreement") on August 2, 2013 under the statement: "The within fee arrangements are hereby acknowledged and agreed." (*Id.*)

The next day, prior counsel sent the following letter to counsel for Chesapeake:

> This letter will confirm that [Mr. Stinger] is willing to settle this matter at the sum of [the settlement amount]. Please note that Mr. Stinger has signed this letter consenting to

---

[1] The record indicates the parties agreed to keep the amount of settlement confidential.

the aforesaid sum. The terms of the aforesaid settlement will need to be finalized, if the same is agreed to. Thank you.

(Prior Counsel's Letter to Chesapeake, 7/31/13, at 1; R.R. at 161a). Underneath prior counsel's signature, the letter states: "I consent to the settlement of the sum of [the settlement amount] for the above captioned matter. It is my understanding that the attorneys for the plaintiff and the defendant will finalize the terms for the settlement." (*Id.*) Mr. Stinger signed his name below this statement along with the date of July 31, 2013. (*See id.*)

Counsel for Chesapeake responded on August 6, 2013, as follows:

In response to [prior counsel's] letter of July 31, 2013, to [Chesapeake's counsel], Chesapeake will agree to settle this matter by purchasing Mr. Stinger's property which is the subject of this action and will agree to pay a total of [the settlement amount], conditioned as follows:

1. Clear title with a warranty from the trust and Mr. Stinger. Chesapeake will have a reasonable time to obtain a title opinion and appraisal.

2. The allocation of the [settlement amount] payment will include $200,000 for attorney's fees, with the remaining allocation of [the settlement amount] between purchase price and damages to be at Chesapeake's reasonable discretion and based on an appraisal of the property with the understanding that it is the shared goal of the parties to minimize the tax consequences for both parties.

3. The parties will agree to a confidential settlement agreement which will provide for:

a. A full release of all claims that Mr. Stinger,

> > the trust and their heirs and assigns made or could have made relating to the property.
> >
> > b. The dates and conditions for closing.
> >
> > c. Dismissal with prejudice of the lawsuit filed at *Walter R. Stinger, Sr. v. Chesapeake Appalachia, L.L.C.*, A.D. No. 860-2010.
> >
> > 4. An agreement that Chesapeake may begin its reclamation work now without any interference, objection or motion for injunction from Mr. Stinger.
> >
> > If these terms are agreeable, please sign below and return. I will get the settlement agreement drafted for your review.

(Chesapeake's Letter to Prior Counsel, 8/6/13, at 1-2; R.R. at 164a-165a). Chesapeake's counsel signed below these terms. (**See id.** at 2; R.R. at 165a). Under that signature, the letter continues: "The terms outlined above in items 1-3 are agreed to in principle pending agreement to a signed settlement agreement. Item 4 is agreed to as of the date noted below[.]" (**Id.**) Prior counsel signed the letter below this statement along with the date of August 9, 2013. (**Id.**)

On September 3, 2013, Chesapeake filed a motion to discontinue a pretrial conference scheduled for the following day, based on its belief that the parties had reached a settlement agreement. The court granted Chesapeake's motion. On September 4, 2013, Mr. Stinger appeared in court for the pre-trial conference; however, neither prior counsel nor anyone on behalf of Chesapeake attended. Prior counsel and counsel for Chesapeake

subsequently drafted a final settlement agreement. Nevertheless, Mr. Stinger refused to sign the document or provide Chesapeake with the relevant settlement documents.

On December 6, 2013, Chesapeake filed a petition to enforce the settlement agreement. Mr. Stinger subsequently hired new counsel ("replacement counsel"), who entered his appearance on December 19, 2013.[2] Mr. Stinger filed an answer to Chesapeake's petition that same day, and amended it on December 31, 2013. On February 18, 2014, the trial court held a hearing on Chesapeake's petition to enforce the settlement agreement. At the hearing, Mr. Stinger alleged the settlement agreement was unenforceable for the following reasons: Mr. Stinger did not intend to sell the property; Mr. Stinger wanted the case to proceed to trial; Mr. Stinger had no involvement with the settlement negotiations after he signed the July 31, 2013 letter; Mr. Stinger did not agree to the final terms of the settlement and prior counsel lacked authority to agree to those terms; and prior counsel's fee was excessive in light of the parties' alleged settlement.

The court granted Chesapeake's motion on April 29, 2014. The court ordered Chesapeake to arrange closing and provide the total consideration due to Mr. Stinger at closing; and ordered Mr. Stinger to provide the deed to the property at closing. The court also ordered Chesapeake to deposit

_____

[2] Replacement counsel is also counsel on appeal.

$200,000.00 from the settlement amount (the disputed attorney's fee) with the court, pending disposition of prior counsel's claim for fees. On May 8, 2014, Mr. Stinger filed a motion for reconsideration, or alternatively, for a stay of the proceedings pending appeal. The court denied Mr. Stinger's motion on May 16, 2014. That day, Chesapeake filed a motion for clarification, asking the court to make clear whether its April 29, 2014 order required Mr. Stinger to take all necessary actions to enforce the settlement and closing, including execution of the settlement agreement and purchase agreement. The court granted Chesapeake's motion, specifying that Mr. Stinger must take all necessary action to effectuate the settlement and closing, and shall provide Chesapeake with the executed settlement agreement and purchase agreement on or before May 22, 2014. On May 19, 2014, Mr. Stinger timely filed a notice of appeal.[3] The court did not order, and Mr. Stinger did not file, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On May 23, 2014, Mr. Stinger filed a motion for clarification in the trial court, asking whether he was still obligated to execute the settlement agreement in light of his appeal. The court denied Mr. Stinger's motion that

_____

[3] Mr. Stinger did not file an application for stay with this Court per Pa.R.A.P. 1732(b) (stating party may file application for stay of trial court's order in appellate court pending appeal; application must show that trial court denied application for stay in first instance and supply trial court's reasons for its denial of stay; application shall also show reasons for relief requested and facts relied upon).

day, and made clear that its order entered April 29, 2014, as clarified by the May 16, 2014 order, remained in effect. In accordance with the court's directives, Mr. Stinger executed the relevant settlement documents. The parties proceeded to closing on June 6, 2014. On August 1, 2014, Chesapeake sold the property to a third party. Chesapeake filed an application in this Court on August 29, 2014, to dismiss the appeal as moot due to Chesapeake's sale of the property to a third party.

As a prefatory matter, we must consider Chesapeake's application to dismiss the appeal as moot and observe:

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

*Warmkessel v. Heffner*, 17 A.3d 408, 412-13 (Pa.Super. 2011), *appeal denied*, 613 Pa. 671, 34 A.3d 833 (2011) (quoting *In re D.A.*, 801 A.2d 614, 616 (Pa.Super. 2002) (*en banc*)). "The concept of mootness focuses on a change that has occurred during the length of the legal proceedings." *Warmkessel, supra* at 413 (quoting *In re Cain*, 527 Pa. 260, 263, 590 A.2d 291, 292 (1991)). "If an event occurs that renders impossible the grant of the requested relief, the issue is moot and the appeal is subject to dismissal." *Warmkessel, supra* (quoting *Delaware River Preservation*

*Co., Inc. v. Miskin*, 923 A.2d 1177, 1183 n.3 (Pa.Super. 2007)).

Notably, however, an adverse party may not create mootness through "deliberate factual manipulation." *Jefferson Bank v. Newton Associates*, 686 A.2d 834, 838 (Pa.Super. 1996). In *Jefferson*, a condominium association ("Middleton") obtained judgment against the owner of eleven condominium units ("Newton") for failure to pay common expense assessment dues, and filed liens against the units. Middleton subsequently filed suit against Jefferson Bank ("Jefferson"), the primary mortgage holder of the units, to recover the judgment (rather than seeking to enforce liens). Thereafter, Jefferson obtained six mortgage foreclosure judgments against Newton, for failure to pay taxes, and filed a writ of execution to sell those units at sheriff's sale. Prior to the sale, Jefferson assigned the judgments to another entity ("Shell"). Shell was the successful bidder at sheriff's sale for each unit, and Middleton's liens on the units extinguished by operation of law. Shell had previously entered into agreements with several third parties to re-sell the units. Middleton filed petitions in the trial court to set aside the sheriff's sale alleging fraud, and to stay issuance of deeds to the prospective third party buyers. The court denied Middleton's petitions, and Middleton appealed. Jefferson and Shell argued Middleton's appeal was moot.

On appeal, this Court explained:

> Presently, appellees [Jefferson and Shell] argue that this appeal is moot because titles to all of the condominium units at issue were transferred to third parties subsequent to appellant's filing of its notice of appeal. **This is a**

> **specious argument, for it ignores the essential fact that, in the present appeal, it was appellees who transferred the properties after appellant took its appeal. This is a distinction with a difference, because our courts have never held that an adverse party may create mootness through deliberate factual manipulation.**
>
> Appellant has always maintained that its interests were violated by way of a fraudulent sheriff's sale. Appellant has taken no action which would divest it of a real interest in the outcome of these proceedings, and appellees' unilateral actions to that effect will not result in a finding a mootness. We will, therefore, review the substance of appellant's claims.

*Id.* at 838 (emphasis added). Thus, this Court held that Jefferson and Shell's sale of the condominium units at issue to third party buyers after Middleton filed its notice of appeal did not result in a change in facts that rendered Middleton's appeal moot. *Id.*

Instantly, on April 29, 2014, the court granted Chesapeake's petition to enforce the settlement agreement and ordered Mr. Stinger to abide by the terms of the agreement. The court reinforced its order when it denied Mr. Stinger's motions for reconsideration and clarification on May 16, 2013, and May 23, 2013, respectively. Mr. Stinger followed the court's directives and proceeded to execute the relevant settlement documents. Chesapeake, the adverse party, subsequently conveyed the property to a third party **after** Mr. Stinger filed a notice of appeal. Significantly, Mr. Stinger took no independent action to divest his interest in the outcome of the proceedings; instead, he continuously maintained the settlement agreement was invalid

and moved several times for the court to reconsider and clarify its order enforcing the agreement. **_See Jefferson, supra_**. As Chesapeake's unilateral action caused the property at issue to be sold to a third party, Chesapeake cannot now assert the appeal is moot, based on an intervening change in the facts, which was brought about by Chesapeake's deliberate subsequent actions. **_See id._**

Additionally, Mr. Stinger argues that his property sold for less than it was worth, due to his prior counsel's actions. If Mr. Stinger prevails on appeal, Chesapeake can still compensate him monetarily. Thus, the transfer of property to a third party does not render relief impossible in this case. **_See Warmkessel, supra_**. For these reasons, we deny Chesapeake's application to dismiss the appeal as moot.

As a second preliminary matter, we note appellate briefs must conform in all material respects to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure; this Court may quash or dismiss an appeal if an appellant fails to conform with these requirements. Pa.R.A.P. 2101. **_See also_** Pa.R.A.P. 2114-2119 (addressing specific requirements of each subsection of brief on appeal). Regarding the statement of the case section of an appellate brief, Rule 2117 provides, in pertinent part:

**Rule 2117. Statement of the Case**

 **(a) General rule.**—The statement of the case shall contain, in the following order:

\* \* \*

- 10 -

> (4) A closely condensed chronological statement, in narrative form, of all the facts which are necessary to be known in order to determine the points in controversy, with an appropriate reference in each instance to the place in the record where the evidence substantiating the fact relied on may be found. **See** Rule 2132 (references in briefs to the record).
>
> \* \* \*
>
> **(b) All argument to be excluded.**—The statement of the case shall not contain any argument. It is the responsibility of appellant to present in the statement of the case a balanced presentation of the history of the proceedings and the respective contentions of the parties.

Pa.R.A.P. 2117(a)(4), (b).

Additionally, as to the argument section of an appellate brief, Rule 2119(a) provides:

> **Rule 2119. Argument**
>
> **(a) General rule.**—The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a). Importantly, where an appellant fails to properly raise or develop his issues on appeal, or where his brief is wholly inadequate to present specific issues for review, a court will not consider the merits of the claims raised on appeal. **Butler v. Illes**, 747 A.2d 943 (Pa.Super. 2000) (holding appellant waived claim where she failed to set forth adequate argument concerning her claim on appeal; appellant's argument lacked meaningful substance and consisted of mere conclusory statements;

appellant failed to cogently explain or even tenuously assert why trial court abused its discretion or made error of law). ***See also Lackner v. Glosser***, 892 A.2d 21 (Pa.Super 2006) (explaining appellant's arguments must adhere to rules of appellate procedure, and arguments which are not appropriately developed are waived on appeal; arguments not appropriately developed include those where party has failed to cite any authority in support of contention); ***Estate of Haiko v. McGinley***, 799 A.2d 155 (Pa.Super. 2002) (stating rules of appellate procedure make clear appellant must support each question raised by discussion and analysis of pertinent authority; absent reasoned discussion of law in appellate brief, this Court's ability to provide appellate review is hampered, necessitating waiver of issue on appeal).

Instantly, the defects in Mr. Stinger's brief are substantial. Mr. Stinger's "Statement of the Case" totals sixteen (16) pages, fourteen (14) of which are merely a cut-and-paste of prior filings in this litigation and certain excerpts from the trial court's opinion, which Mr. Stinger repeats verbatim without attribution to the trial court. In the two pages in which Mr. Stinger actually discusses the facts of this case, he fails to present a closely condensed chronological statement containing all relevant facts necessary to resolve this appeal. ***See*** Pa.R.A.P. 2117(a). Likewise, Mr. Stinger does not provide a balanced presentation of the history of the proceedings and the respective contentions of the parties (aside from Mr. Stinger's inclusion of

the actual prior filings in this matter). **See** Pa.R.A.P. 2117(b). Instead, his statement of the case consists of a brief procedural history followed by his argument that the alleged settlement agreement failed to include all material terms and was a result of negotiations between Chesapeake and prior counsel, who operated without Mr. Stinger's authority. Inclusion of argument in Mr. Stinger's statement of the case violates Rule 2117(b). **See id.**

More importantly, Mr. Stinger's argument section is woefully inadequate. At the outset, Mr. Stinger's argument again consists of mostly a cut-and-paste of prior filings in this matter, including cut and pasted portions of **Chesapeake's** earlier filings. As to the pages containing Mr. Stinger's original thoughts, he cites no legal authority whatsoever to support his contentions. **See** Pa.R.A.P. 2119(a); **Lackner, supra**; **Haiko, supra**. In fact, the only citation to legal authority in Mr. Stinger's entire appellate brief appears on the pages where he copied and pasted Chesapeake's filings. Additionally, Mr. Stinger attempts to incorporate by reference "all prior paragraphs of all pleadings filed by him and [Chesapeake] as though fully set forth herein." (Mr. Stinger's Brief at 20). **See Moses Taylor Hosp. v. White**, 799 A.2d 802 (Pa.Super. 2002), *appeal denied*, 570 Pa. 687, 808 A.2d 572 (2002) (stating appellate briefs are simply not appropriate vehicles for incorporation by reference of matters appearing in previously filed legal documents). For these reasons, we could quash Mr. Stinger's brief and

dismiss the appeal. *See* Pa.R.A.P. 2101. In all fairness to Mr. Stinger, however, we will address the one issue we can review, despite the many shortcomings in Mr. Stinger's brief:

> DID THE TRIAL COURT ABUSE ITS DISCRETION IN GRANTING THE RELIEF REQUESTED IN [CHESAPEAKE'S] PETITION TO ENFORCE SETTLEMENT [IN] FAVOR OF [CHESAPEAKE] AND THEREAFTER SPECIFIC ORDERS TO ENFORCE THE ORIGINAL ORDER?

(Mr. Stinger's Brief at 3).

Essentially, Mr. Stinger argues that prior counsel lacked the authority to enter into a settlement agreement on Mr. Stinger's behalf. He contends prior counsel acted solely in counsel's own interest to increase his compensation, rather than acting in Mr. Stinger's interest. Mr. Stinger maintains he did not give prior counsel authority to enter into a settlement agreement. Mr. Stinger avers prior counsel was quick to send a "binding, written demand" to Chesapeake in an attempt to settle the case and collect his fee, without explaining to Mr. Stinger that the demand would constitute a final settlement. Mr. Stinger emphasizes he would not have given prior counsel authority to execute the settlement agreement because, in doing so, Mr. Stinger abandoned his potential lawsuit against Chesapeake, sold his property for less than it was worth, and incurred a burdensome tax consequence. Mr. Stinger insists the settlement agreement unfairly rewarded prior counsel and Chesapeake, to Mr. Stinger's detriment. Mr. Stinger claims he wanted a trial to resolve his dispute with Chesapeake, and

prior counsel ignored Mr. Stinger's goal to have his day in court, took advantage of him, and "barnstorm[ed]" an agreement against Mr. Stinger's best interests.

Alternatively, Mr. Stinger argues that, even if prior counsel had authority to enter into the settlement agreement, the agreement is nevertheless unenforceable because it did not include certain material terms. Mr. Stinger contends the settlement agreement failed to include a precise calculation of the allocation between purchase price for the property and underlying damages incurred due to Chesapeake's drilling on the property (which formed the basis for Mr. Stinger's complaint). Mr. Stinger claims any agreement between the parties was, at most, an agreement to agree in the future, which does not constitute an enforceable contract. Mr. Stinger highlights that after prior counsel told Chesapeake the parties would settle the case, Mr. Stinger appeared in court for a previously scheduled pre-trial conference, which demonstrates Mr. Stinger's belief that the parties had not yet negotiated a settlement; and unbeknownst to Mr. Stinger, the court cancelled the pre-trial conference based on Chesapeake's representations that the parties were negotiating settlement. Mr. Stinger avers the parties had a clear understanding throughout the proceedings that they would present a final settlement in open court, so the court and the parties could both adopt the settlement agreement. Mr. Stinger concludes this Court must reverse the trial court's order enforcing the settlement agreement or

remand the matter for a hearing.  We disagree.

Our standard and scope of review in this case are as follows:

> The enforceability of settlement agreements is determined according to principles of contract law.  Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation.  Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision.  With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record.
>
> > The law of this Commonwealth establishes that an agreement to settle legal disputes between parties is favored.  There is a strong judicial policy in favor of voluntarily settling lawsuits because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant.  If courts were called on to reevaluate settlement agreements, the judicial policies favoring settlements would be deemed useless.  Settlement agreements are enforced according to principles of contract law.  There is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum).
> >
> > Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement.  This is true even if the terms of the agreement are not yet formalized in writing. …
>
> [***Mastroni-Mucker v. Allstate Ins. Co.***, 976 A.2d 510, 518 (Pa.Super. 2009), *appeal denied*, 605 Pa. 715, 991 A.2d 313 (2010)] (internal citations and quotation marks omitted).

***Step Plan Services v. Koresko***, 12 A.3d 401, 408-09 (Pa.Super. 2010)

- 16 -

(some internal citations and quotation marks omitted).

"[I]f the parties agree on essential terms and intend them to be mutually binding, a contract is formed even though the parties intend to adopt a formal document later which will include additional terms." ***Compu Forms Control, Inc. v. Altus Group, Inc.***, 574 A.2d 618, 624 (Pa.Super. 1990). Importantly:

> The law demands of every [person] who bargains with another that he should do so only after due reflection of the possible consequences of his bargain and if he misjudges consequences that could have been expected by a reasonably intelligent man, he cannot rely on the law to remedy his fecklessness. Absent some legally recognized infringement of the law of contract by one party, the law will not reform a written contract so as to make a contract for the parties that they did not make for themselves and certainly never to rescue a party who did not reasonably foresee the consequences of his bargain.

***Id.*** (quoting ***New Charter Coal Co. v. McKee***, 411 Pa. 307, 312, 191 A.2d 830, 833 (1963)). Once formed, a settlement will not be set aside except upon a clear showing of fraud, duress, or mutual mistake. ***Step Plan, supra*** at 409. "Where the parties, without any fraud, duress, or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement...." ***Id***. (quoting ***Ragnar Benson, Inc. v. Hempfield Tp. Mun. Authority***, 916 A.2d 1183, 1189 (Pa.Super. 2007)).

Instantly, the trial court granted Chesapeake's petition to enforce the settlement agreement, reasoning:

Settlement discussions had proceeded between the parties to the point where [Chesapeake] suggested a purchase of [Mr. Stinger's] land rather than payment of damages. The testimony showed that even prior to the litigation, [Mr. Stinger] had considered selling the land and had listed it for sale. On July 30, 2013, [prior counsel] wrote to [Mr. Stinger], advising him that [Chesapeake] had indicated that a certain sum was available if [Mr. Stinger] made a "binding, written demand" for that amount. As an additional inducement to [Mr. Stinger] to accept the proposal, [prior counsel] agreed to reduce their fee. [Mr. Stinger] signed the letter acknowledging the revised fee agreement.

On July 31, 2013, [prior counsel] wrote to counsel for [Chesapeake]:

> This letter will confirm that [Mr. Stinger] is willing to settle this matter at the sum of [the settlement amount]. Please note that Mr. Stinger has signed this letter consenting to the aforesaid sum. The terms of the aforesaid settlement will need to be finalized if the same is agreed to. Thank you.
>
> Very truly yours,
> By: /s/ [prior counsel]
> [prior counsel's signature]
>
> I consent to the settlement of the sum of [the settlement amount] for the above captioned matter. It is my understanding that the attorneys for the plaintiff and the defendant will finalize the terms of the settlement.
>
> /s/ [Mr. Stinger]
>    7/31/13
> [Mr. Stinger's signature]           Date

In response to [prior counsel's] letter of July 31, 2013, counsel for [Chesapeake] wrote on August 6, 2013:

> …Chesapeake will agree to settle this matter by purchasing Mr. Stinger's property…and will pay a

total of [the settlement amount] conditioned as follows:

1. ***
2. ***
3. The parties will agree to a confidential settlement agreement which will provide for:
   a.  A full release of all claims
   b.  ***
   c.  Dismissal with prejudice of the lawsuit…

At this point, there was offer and acceptance and therefore a binding contract. [Mr. Stinger] disputes this and claims that his consent to settle this matter for a specific sum of money was only an agreement to agree at some time in the future. In his Brief in Opposition to the Petition to Enforce Settlement he states: "All parties clearly understood that there would never be a settlement until it was presented in open [c]ourt for adoption by the [c]ourt and the parties in a knowing intelligent manner." This is news to the [c]ourt. Generally, the only settlements requiring [c]ourt approval are wrongful death actions and cases involving minors. Most civil litigation is settled as in this case, by agreement of the parties. Eventually, the settlement is noted on the record by the plaintiff's *praecipe* to discontinue, which certainly does not require court approval.

Often the argument in these kinds of cases is that the attorney lacked express authority to bind his client. Here, any question of [prior counsel's] authority was pretty much satisfied by [Mr. Stinger's] signature on the July 31, 2013 letter, where he specifically agreed to the settlement amount and where he expressly authorized his attorney to "finalize the terms for the settlement." In his brief, [Mr. Stinger] claims that he really did not mean this, and as evidence offers his "actions to fire old counsel and retain new counsel." To a disinterested observer, those actions by [Mr. Stinger] indicate that at some point after July 31, 2013, he simply changed his mind.

Next, [Mr. Stinger] argues that there was no mutual consent because an essential element of the bargain had

- 19 -

yet to be resolved, that is, the division of the proceeds between consideration for the land and damages. While this is a significant issue, we believe it is one of "terms of the settlement" that [Mr. Stinger] authorized his then counsel to finalize. Obviously, it is in the best interest of a seller in [Mr. Stinger's] position to reduce consideration to minimize capital gain, but the parties' discretion is not unlimited. There are other interested parties, the Internal Revenue Service, for instance, that have the right to scrutinize this transaction. An artificially low sale price might attract attention by a taxing body. It is certainly in [Chesapeake's] best interest and to be expected by [Mr. Stinger] that [Chesapeake] would have to have some evidence, such as an appraisal from a real estate expert, to justify whatever figure was finally agreed upon.

[Mr. Stinger] in his brief continuously suggests that the proposed settlement was a bad bargain for him, as though this [c]ourt should concern itself with the adequacy of consideration in any kind of a contract situation where the party is *sui juris*. He suggests that the agreed consideration was less than the property was worth, but offers no objective indication of value. While we honor the parties' request to keep the final settlement figure confidential, it will be useful to know that the settlement figure was more than three and one-half times what [Mr. Stinger] paid for the land eleven years earlier.

\* \* \*

(Trial Court Opinion, filed April 29, 2014, at 4-7; R.R. at 48a-51a) (internal citations omitted). We accept the court's sound reasoning. The parties' letters contain all of the requisites for a valid contract. **See Step Plan, supra**. Additionally, the letters set forth the essential terms of the settlement agreement, leaving additional items to be finalized at a later date, at which point the parties would execute a final settlement document memorializing those terms. **See Compu Forms, supra**. Significantly, Mr.

Stinger does not claim he signed the July 31, 2013 letter as a result of fraud, duress, or mistake. **See Step Plan, supra**. The parties' letters constitute the best evidence of their agreement to settle, and we see no reason to disturb the court's decision to enforce that agreement.[4] **See id.** Mr. Stinger states in the Conclusion of his brief, "it certainly seems abundantly clear that [Mr. Stinger] at the very least changed his mind." (Mr. Stinger's Brief at 41). Mr. Stinger's "change of heart," however, does not render the settlement agreement invalid. **See Compu Forms, supra**. Accordingly, we affirm.

Order affirmed.


Judgment Entered.

_____

[4] Regarding Mr. Stinger's specific arguments that prior counsel did not act in Mr. Stinger's best interests or effectively assist his case, these claims are waived for failure to properly develop them on appeal with citation to legal authority. **See Lackner, supra**; **Haiko, supra**. To the extent Mr. Stinger complains about prior counsel's fee, Mr. Stinger's signature on the revised fee agreement indicates he agreed to pay prior counsel a fee of $200,000.00 if Chesapeake paid the settlement amount. (**See** Prior Counsel's Letter to Mr. Stinger, 7/30/13, at 1; R.R. at 162a.) In any event, in its order granting Chesapeake's petition to enforce the settlement agreement, the court directed Chesapeake to deposit the disputed $200,000.00 with the court pending disposition of prior counsel's claim for fees. The certified record reveals no outcome of that proceeding, which is not properly the subject of this appeal in any event.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/15/2014