574 A.2d 618

COMPU FORMS CONTROL, INCORPORATED, Appellee,

v.

ALTUS GROUP, INCORPORATED, David Jefferys, Amy McLaughlin and Charles Chambers, Appellants.

ALTUS GROUP, INC., Appellants,

v.

COMPU FORMS CONTROL, INC. and Michael Vognoni, Appellees.

COMPU FORMS CONTROL, INCORPORATED, Appellant,

v.

ALTUS GROUP, INCORPORATED, David Jefferys, Amy McLaughlin and Charles Chambers, Appellees.

ALTUS GROUP, INC., Appellees,

v.

COMPU FORMS CONTROL, INC. and Michael Vognoni, Appellants.

Superior Court of Pennsylvania.

Argued March 7, 1990.

Filed April 17, 1990.

Reargument Denied June 4, 1990.

James C. Sargent, Jr., West Chester, for Altus Group, Jeffreys, McLaughlin and Chambers, appellants in No. 1959 and appellees in No. 2108.

William J. Gallagher, Kennett Square, for Compu Forms, appellant in No. 2108 and appellee in No. 1959.

Before McEWEN, MONTEMURO and CERCONE, JJ.

MONTEMURO, Judge:

Both parties in this case have filed appeals from the order of the Court of Common Pleas of Chester County, dated July 13, 1989, which marked as settled and discontinued two consolidated actions then pending in the trial court: Nos. 88–03336 and 88–03467. Following our review of the record before us, we affirm the trial court's order with a modification.

Compu Forms Control, Inc., a company owned and operated by Michael Vagnoni, is engaged in the sale and distribution of business forms. From 1983 to April of 1988, David Jefferys and Amy McLaughlin worked for Compu Forms. In April of 1988, Jefferys and McLaughlin left Compu Forms and formed their own corporation with Charles Chambers. This new company is known as Altus Group,

Inc., and, like Compu Forms, is also engaged in the sale and distribution of business forms. On May 2, 1988, Compu Forms [1] filed a complaint (No. 88–03336) against Altus, alleging that during their association with Compu Forms, both Jefferys and McLaughlin had orally agreed to keep confidential and to return upon their termination, Compu Forms's "technical know-how, processes, designs, mechanicals, customer lists, fees, data, reports, records and policies." R.R. at 27a. Compu Forms also claimed that the two had agreed not to contract with Compu Forms's clients or prospective clients for their benefit as a condition of their employment. *Id.* at 27a. Compu Forms alleged, *inter alia*, that after forming Altus, Jefferys and McLaughlin had contacted customers of Compu Forms to solicit business. The complaint filed by Compu Forms set forth the following causes of action: tortious interference with contractual relations, tortious interference with business relations, tortious interference with prospective business relationships, breach of contract, misappropriation of trade secrets, and civil conspiracy.

In addition to the complaint, Compu Forms filed a petition for a preliminary injunction, requesting that the trial court:

a. enjoin the Defendants, Altus, Jefferys, McLaughlin and Chambers, from contacting or soliciting in any manner whatsoever any existing or current customers or clients of the Plaintiff;

b. enjoin the Defendants, Altus, McLaughlin and Jefferys from slandering and defaming the plaintiff;

c. enjoin the Defendants from contacting any future customers and clients of the Plaintiff;

d. order and direct the Defendants, Jefferys and McLaughlin, to return the mechanicals and customer lists and other confidential information to the Plaintiff;

1. In the interest of clarity, when referring to "Compu Forms" as a litigant, we also refer to Michael Vagnoni. Likewise, when we refer to "Altus" as a litigant, we necessarily include David Jefferys, Amy McLaughlin, and Charles Chambers.

e. prepare an accounting of any profits realized from or attributable to the use of the confidential and secret information. . . .

*Id.* at 16a–17a.

On May 2, 1988, the trial court entered a temporary restraining order, which enjoined Altus from soliciting business from existing customers of Compu Forms who were customers of Compu Forms prior to September of 1983. A hearing on Compu Forms's petition for a preliminary injunction was scheduled for May 6, 1988. In responding to the petition for a preliminary injunction, Altus filed preliminary objections on May 5, 1988, claiming that Compu Forms had an adequate remedy at law, thus precluding equitable relief. *Id.* at 86a. Further, Altus claimed that Jefferys and McLaughlin had never agreed orally or otherwise to any restrictions on their ability to compete with Compu Forms. Also on May 5, 1988, Altus filed a complaint in equity against Compu Forms (No. 88–03467), alleging that when they came to Compu Forms in 1983, they brought certain customers which remained their exclusive customers even though they were "commissioned salesmen" for Compu Forms. *Id.* at 107a and 109a.[2] After forming Altus, Jefferys and McLaughlin continued their relations with their customers based upon the customers' "course of dealing and good will with Jefferys and McLaughlin." *Id.* at 133a. The complaint in equity also alleged that Compu Forms owed Jefferys and McLaughlin approximately $20,000.00 in commissions. Further, it was claimed that Vagnoni, following the formation of Altus, contacted the customers of Jefferys and McLaughlin, and through "veiled threats, misstatements of fact [and] defamatory statement[s]" attempted to induce the customers not to do business with Altus and to cause irreparable harm to the reputations of Jefferys and McLaughlin. *Id.* at 114a. Altus sought the following relief:

2. It is apparent from the record that prior to the formation of Compu Forms, Vagnoni, Jefferys, and McLaughlin were associated with the same company: Digimatics.

WHEREFORE, For all the foregoing reasons, Jefferys and McLaughlin pray for entry of an Order in the form attached permanently enjoining Vagnoni and Compu Forms from further contacts with Altus's customers, its manufacturers, printers and suppliers for the purposes of defaming Plaintiff, wrongfully deterring such third parties from dealing with Plaintiff, or any other actions undertaken for the specific purpose of causing Plaintiff's [sic] economic detriment.

*Id.* at 116a.

It is not disputed that prior to the hearing scheduled on May 6, 1988, counsel for both parties in the actions outlined above engaged in approximately four hours of settlement negotiations in lieu of participating in the scheduled hearing. In the trial court's July 13, 1989, Opinion, the court notes that "slightly before noon [on May 6, 1988] we were advised that a 'settlement' had been reached and the parties wished to place same 'on the record.'" Op. of Trial Court, July 13, 1989, at 1–2. The following was placed on the record:

THE COURT: Why don't you put the broad outline on the record here, just so I have some sense of what you folks think is justice, anyway.

MR. GALLAGHER: I guess I will state it then, Judge. Again, subject to somebody correcting me, I think the terms of the settlement is an overall settlement between these parties, the result of which is the defendants [Altus] will agree to pay to the plaintiff [Compu Forms] the sum of $100,000. That will be paid, plus interest at a rate of ten percent, that will be paid at the rate of $1,500 per month on a declining—interest paid on a declining balance with a balloon payment at the end of one year; that the parties will exchange mutual general releases, and in addition to that they will sign a confidentiality agreement that the terms of this settlement are confidential, unless there is a court order to make it public.

And in addition to that, neither of them will interfere with the business relationship of the other with any

person, but that includes any of the customers with which they have jointly been dealing with. And in addition, they will not, to other people, disparage the other person, and that the payment will be with an installment judgment note signed by the defendants.

Is that a fair statement?

MR. SARGENT: Only one refinement. I do not understand that the confidentiality agreement will place any restriction on either party from contacting the customers of the other party.

MR. GALLAGHER: That's correct. It's just a question of they will not disparage the other, or try to interfere with existing business relationships because I think we have some contracts in place with some people that we anticipate going with the defendants and we want to be able to finish that out, and they have an obvious interest in us not contacting factories that they may use, or customers that they anticipate holding by making disparaging remarks about that.

MR. SARGENT: But contacting those suppliers alone isn't interference with the business relationship.

MR. GALLAGHER: That's correct. No, no. It's the interference or disparaging remarks, not contacting them for business dealings.

THE COURT: Well done.

R.R. 153a–154a.

In the months that followed, the parties in the instant case attempted to execute written settlement documents. When this was not successful, Compu Forms filed a petition to compel settlement on December 23, 1988, requesting that the trial court enforce the terms of the settlement as set forth on the court record on May 6, 1988. Compu Forms claimed that Altus had "failed and refused to abide by the terms of the [oral] Agreement and repeatedly [has] attempted to modify the terms of said Agreement." *Id.* at 123a. In responding to the petition to compel settlement, Altus claimed that "after lengthy negotiations in the courthouse" on May 6, 1988, the parties "achieved an agreement in

principle, both parties acknowledging that all of the terms of the agreement in principle subsequently would be committed to writing in a separate settlement agreement to be executed by both parties." *Id.* at 158a. Thus, Altus took the position that no enforceable settlement agreement had been reached on May 6, 1988, but that what had occurred on that date amounted to mere negotiations. Altus further claimed that it was Compu Forms which had refused to go through with the written settlement agreement, thus unilaterally repudiating its terms.

On January 20, 1989, the trial court consolidated the actions which underlie the present appeal: Nos. 88–03336 and 88–03467. Although Altus continued to file pleadings in the consolidated cases, Compu Forms, in responding to these pleadings, maintained that the litigation between the parties had been settled. Following the trial court's order of July 13, 1989, which determined that the consolidated cases were indeed settled and discontinued, both Compu Forms and Altus filed petitions for reconsideration and subsequently, filed appeals to this Court.

We will begin by addressing the issues presented on appeal by Altus. First, Altus claims that the trial court erred in finding that a valid and enforceable agreement to settle had been entered into by the parties on May 6, 1988. Further, Altus argues that because Compu Forms "repudiated the written settlement agreement" the parties are entitled to proceed with the prosecution of their respective lawsuits. In *Johnston v. Johnston*, 346 Pa.Super. 427, 499 A.2d 1074 (1985), this Court recognized the following principles of law which are controlling instantly:

> If parties agree upon essential terms and intend them to be binding, "a contract is formed even though they intend to adopt a formal document with additional terms at a later date." *Courier Times, Inc. v. United Feature Syndicate, Inc.*, 300 Pa.Super. 40, 54, 445 A.2d 1288, 1295 (1982).... The intent of the parties is a question of fact which must be determined by the factfinder.... A re-

viewing court must defer to the findings of the trier of the facts if they are supported by the evidence....

*Id.*, 346 Pa.Superior Ct. at 431, 499 A.2d at 1076–1077 (citations omitted).

In the present case, the trial court's Opinion of July 13, 1989, makes clear that the trial court found, as a factual matter, that the parties intended to enter into an enforceable settlement.agreement on May 6, 1988. The record supports this factual finding in that the parties agreed upon the terms of the settlement on the record on May 6, 1988, even engaged in some clarification of the exact terms on the record, and then did not proceed to participate in the hearing which had been scheduled for that day. Although it was indeed contemplated that the settlement agreement would be subsequently reduced to writing, neither party stated on the record that there would not be a contract until a writing had been executed. Moreover, in view of the pleadings which had been filed by both sides, the settlement agreement of May 6, 1988, reflected a consideration of the concerns of both sides. It entailed a payment to Compu Forms and, in answer to the claims of Altus in its complaint in equity, all parties agreed to refrain from making disparaging remarks concerning the other party and to refrain from wrongfully disrupting the business of the other party.

This case is analogous to *Johnston v. Johnston, supra,* wherein the trial court had entered an order which included the following language:

NOW, September 23rd, 1981, the Court hereby accepts the agreement entered into, fully recognizing that it is presented to the Court in rough form but that the contents of the said agreement will be the basis upon which the trust agreement shall be formally prepared and signed by each of the parties and their individual spouses....

*Id.*, 346 Pa.Superior Ct. at 430, 499 A.2d at 1076. After the agreement had been reduced to a writing, some of the parties refused to sign it. This Court in *Johnston* rejected the argument that no final, enforceable agreement had been entered on September 23, 1981, noting that after advising the court that an agreement had been reached, and placing

the terms on the record, each party advised the court that the oral recitation of the terms was correct. In response to the claim that the statements recorded in court amounted to evidence of only an agreement to negotiate further, this Court stated that "the fact that the parties had already negotiated for two years ... suggests the unlikelihood that [they] would have agreed to terminate their action for something less than a binding agreement." *Id.*, 346 Pa.Superior Ct. at 432, 499 A.2d at 1077.

We are not convinced by Altus's attempt to distinguish *Johnston* from the instant case. As in *Johnston,* the agreement placed upon the record in the case at bar was in rough or outline form. This does not alter the fact that the parties in both cases had reached an agreement as to the essential terms of the settlement, even though additional terms would be added to embellish the settlement agreement when it was reduced to writing. In both cases, the parties agreed on the record that the statement of the terms of the settlement comported with their understanding of the negotiated agreement. Although settlement negotiations in *Johnston* had occurred for a two year period prior to the settlement agreement, the present case involved a situation where time was of the essence. Altus had sought preliminary injunctive relief from certain alleged actions of Compu Forms, claiming that as a "fledgling corporation" it was likely to suffer great injury from the actions of Vagnoni in allegedly attempting to disparage the reputations and good will of Jefferys and McLaughlin in the industry. Further, Altus had claimed that immediate judicial relief was needed, because "with less than a month of business activity, with substantial indebtedness, lack of receivables, lack of financial depth...." Altus claimed that relative to Compu Forms it was not in the position to withstand protracted litigation. R.R. at 94a. Likewise, Compu Forms had sought and had been granted a temporary restraining order to prevent Altus from soliciting business from some of Compu Forms's customers. Thus, the exigent circumstances which existed between these parties on May 6, 1988,

make it unlikely that they would not have proceeded with the scheduled hearing if a binding agreement to settle had not been reached between them.

Altus makes much of the fact that the parties spent three months trying to execute a written settlement agreement, arguing that this proves that no agreement was reached on May 6, 1988. This claim is meritless. Our Supreme Court, in *Woodbridge v. Hall*, 366 Pa. 46, 76 A.2d 205 (1950), held that an oral agreement to settle, which included the essential terms of the agreement between the parties, was enforceable, even though the parties were unable agree, despite numerous drafts, to the terms of a written settlement agreement. *See also Kazanjian v. New England Petroleum Corporation*, 332 Pa.Super. 1, 480 A.2d 1153 (1984). Additionally, Altus contends that no contract was reached on May 6, 1988, because certain essential terms of the settlement agreement had not been agreed upon. Except for Altus's bald claim in this regard, there is no evidence in the record to support a finding that the settlement agreement reflected in the May 6, 1988, court record is unenforceable because certain essential terms of the settlement had not been agreed upon at that time. Specifically, Altus refers to a term which appears in the draft written settlement agreement, which required Compu Forms to assign to Altus rights in certain artwork, mechanicals, plates, negatives and other items of good will. R.R. at 207a–208a. While this term was certainly contemplated as an additional term in the proposed written settlement agreement, there is no evidence to support the claim that this term was an essential term of the settlement agreement. *Cf. Miller v. Clay Township*, 124 Pa.Commw. 252, 555 A.2d 972 (1989) (no enforceable settlement agreement had been reached where there was no evidence that the parties had reached an agreement as to the final placement of a roadway, which was the essence of the dispute between the parties). Indeed, this claim for relief was not even a part of the complaint filed by Altus under No. 88–03467. It is thus, at most, an additional term, which will

not prevent the enforcement of the May 6, 1988, settlement agreement.[3]

■ As we have recognized, if the parties agree on essential terms and intend them to be mutually binding, a contract is formed even though the parties intend to adopt a formal document later which will include additional terms. We do not doubt that Altus now wishes it would have insisted upon this additional term in its earlier pleadings and on May 6, 1988, prior to its agreement to settle the disputes between the parties. However, as our Supreme Court opined in *New Charter Coal Co. v. McKee*, 411 Pa. 307, 312, 191 A.2d 830, 833 (1963):

> The law demands of every man who bargains with another that he should do so only after due reflection of the possible consequences of his bargain and if he misjudges consequences that could have been expected by a reasonably intelligent man, he cannot rely on the law to remedy his fecklessness. Absent some legally recognized infringement of the law of contract by one party, the law will not reform a written contract so as to make a contract for the parties that they did not make for themselves and certainly never to rescue a party who did not reasonably foresee the consequences of his bargain.

■ The remaining claims of Altus may be disposed of without lengthy discussion, as we find them to be frivolous. Altus claims that the settlement agreement of May 6, 1988, cannot be viewed as a settlement of its action filed under

3. Altus argues that because Compu Forms objected to this term in the written settlement agreement, and thus prevented the parties from achieving a written contract, that Compu Forms should be prevented from enforcing the oral settlement agreement. "Judicial policy favors the settlement of law suits and in the absence of fraud and mistake the courts will enforce an agreement to settle a legal dispute." *Miller v. Clay Township*, 124 Pa.Commw. 252, 255, 555 A.2d 972, 973 (1989) (citations omitted). We have found no error in the trial court's holding that the parties entered into an enforceable settlement agreement on May 6, 1988. There is no evidence in the record that this contract was ever rescinded. The subsequent, unsuccessful negotiations between the parties do not discharge Altus's obligation to perform the basic settlement contract. *Johnston v. Johnston*, 346 Pa.Super. 427, 499 A.2d 1074 (1985).

No. 88–03467, as the actions were not consolidated until January of 1989. The language of the record from May 6, 1988, and the subsequent conduct of the parties amply support the trial court's finding that the parties intended to settle both legal actions and thus to "resolve all matters in dispute. Everyone was aware of the companion action and indeed a settlement of half a lawsuit is no settlement." Op. of Trial Court, July 13, 1989, at 6. Altus also claims that the trial court erred when, during a May 11, 1989, proceeding, the court refused to "deem as admitted, pursuant to Pa.R.C.P. 209, all facts contained in its Answer to the Petition [to Compel Settlement.]" Brief for Altus at 32. We will not address this claim, as we have no record of the May 11, 1989, proceeding. In any event, our record contains no docket entry to establish that Altus ever proceeded under the dictates of Pa.R.C.P. 209(b) and, consequently, the trial court was not required to grant Altus the relief it allegedly requested.

■ Finally, Altus contends that the trial court erred in failing to hold an evidentiary hearing, rendering its decision without foundation in fact. This claim must be rejected. The trial court's decision was supported by the record of the May 6, 1988, hearing over which the trial court presided and in turn interpreted in light of the surrounding circumstances.[4]

■ Compu Forms raises a sole issue on appeal. Stated succinctly, Compu Forms seeks a modification of the trial court's order which marked the consolidated actions as settled, and discontinued to also reflect the specific relief sought by Compu Forms in its petition to compel settlement: an order granting specific performance of the terms of the May 6, 1988, agreement. We agree with Compu Forms that, based upon the specific request for relief set forth in its petition to compel settlement, that the trial court

4. Altus claims that a number of equitable doctrines prevented the trial court from granting Compu Forms's petition to compel settlement. We have examined these doctrines, and we find no support in the case law or the facts of the present case to support their application instantly.

erred in not expressly entering an order of specific performance, obligating both parties to comply with the terms of their contractual undertaking. We thus enter the following order:

The July 13, 1989, Order of the trial court is affirmed as modified with the addition of the following: Specific performance of the terms of the May 6, 1988, settlement agreement, as set forth in the court record, is ordered.