J-A02040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SWEPI, LP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HARVEY AND BOBBI JO WOOD | : | |
| | : | |
| Appellants | : | No. 508 MDA 2018 |

Appeal from the Order Entered March 2, 2018
In the Court of Common Pleas of Tioga County Civil Division at No(s):
59 Civil 2011

BEFORE:  LAZARUS, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED APRIL 17, 2019**

Appellants Harvey and Bobbi Jo Wood appeal from the order granting Appellee SWEPI, LP's motion to enforce settlement agreement.  Appellants argue that the parties did not agree on several material terms of the settlement agreement, and they did not intend for the oral agreement to be operative in the absence of an executed written agreement.  We affirm.

The relevant facts and procedural history of this appeal are as follows.

This case began in 2011 when [Appellee] filed suit against [Appellants] in a dispute involving a . . . gas lease and access to [Appellants'] property.  Through previous litigation, the case has been appealed to the Superior Court on two prior occasions.  In the last appeal, the Superior Court overturned the court's grant of [Appellants'] Motion for Summary Judgment.[1]  Upon remand, the court scheduled the matter for trial.  Jury selection was scheduled to commence Tuesday, February 14, 2017.  On Monday, [February

---

[1] **See SWEPI LP v. Wood**, 1945 MDA 2015 (Pa. Super. filed Sep. 7, 2016) (unpublished mem.).

13th,] the court was informed the parties had reached a settlement agreement and held a telephone conference on the record with the parties' respective counsel, Attorney Jeremy Mercer for [Appellee] and Attorney Cassandra Blaney for [Appellants]. During the telephone conference, counsel informed the court the parties came to a settlement of not only this case but also two other cases between the parties that were then pending in the Tioga County Court of Common Pleas. The court then canceled the trial set to begin the next day.

After the court canceled the scheduled trial, Attorney Mercer sent Attorney Blaney a written agreement for [Appellants] to sign. [Appellants], however, refused to execute the written settlement agreement and retained new counsel. [Appellee] thereafter filed a Motion to Enforce Settlement Agreement. The court held a hearing on the motion over three days and took testimony from [Appellant, Ms.] Bobbi Jo Wood, [Appellant, Mr.] Harvey Wood, and Attorney . . . Blaney.

Trial Ct. Op., 5/25/18, at 1-2.

At the hearing on August 16, 2017, both parties submitted the relevant emails documenting the negotiations between Attorneys Blaney and Mercer. An email Attorney Mercer sent at 3:11 p.m. on Sunday, February 12, 2017, indicated that the parties had reached a settlement pursuant to the following terms:

- The parties will execute a Confidential Settlement Agreement and Release that contains standard terms and conditions, including confidentiality and a global release of claims (but which release will exclude any claims [Appellants] may have related to sick cows), and detail the payment of ███████████████████ (to be paid within 45 days of execution of the settlement agreement).[2] The scope of the release and the terms of this document will be those found within the Confidential Settlement Agreement and Release sent to you earlier this year in connection with another matter, with the case-

_____

[2] The parties redacted the amount of the payment.

specific references changed . . . to the matters being resolved here.

● The parties will enter into a new Oil and Gas Lease for the acreage covered by the November 21, 2000, Allegheny Energy Development Corporation lease. That lease will be the standard lease that [Appellee] is offering in the Tioga County area, a copy of which was sent to you in January of this year in connection with another matter. The "bonus" payment will be $1200 per net acre and the royalty percentage will be 12.5%.

● The parties will agree on terms for an addendum to be part of the aforementioned new Oil and Gas Lease. You explained that the terms your clients wants [sic] to have included in the addendum are the same as those you provided in January of this year in connection with another matter. I explained that the land department would have to review but those terms, save the two noted in the next sentence, appear to [be] acceptable; final determination on that, though, must come from the land department. The Pugh Clause and the Shut-In Clause of that prior addendum are not acceptable. The Pugh Clause will be removed entirely. The Shut-In Clause will have terms added to it to ensure that it [is] understood to operate prospectively only, e.g., the five-year clock does not begin to run until the date of the Oil and Gas Lease.

● The parties will execute a Ratification and Amendment for which (i) ratifies the November 21, 2000 Allegheny Energy Development Corporation lease and then (ii) amends that lease by replacing it in whole with the terms of the aforementioned Oil and Gas Lease, with Addendum as of the date of the new Oil and Gas Lease.

● The parties will execute a Memorandum of Lease that can be recorded evidencing the new Oil and Gas Lease should [Appellee] desire to record that instead of the new Oil and Gas Lease, with Addendum.

● Without limiting the breadth of the aforementioned global release, the parties will dismiss with prejudice the following cases pending in Tioga County, Pennsylvania, within 5 business days of the date of the execution of the

- 3 -

> Confidential Settlement Agreement and Release: SWEPI LP v. Harvey R. Wood and Bobbi Jo Wood, 59 CV 2011; Harvey R. Wood and Bobbi Jo Wood v. SWEPI LP, 654 CV 2011; and SWEPI LP v. Harvey R. Wood and Bobbi Jo Wood, 993 CV 2013.
>
> ● The parties will use good faith efforts to attempt to resolve the issue of [Appellants'] alleged inability to access a portion of their property in the Wood 626 Unit that is south of the existing well pad.

Appellants' Ex. 1 at 2-3; Appellee's Ex. 5 at 2-3.

Attorney Blaney testified that she informed Mr. Wood about all aspects of the proposed settlement on February 12th, immediately after receiving the email from Attorney Mercer. After the conversation between Attorney Blaney and Mr. Wood, Appellants authorized Attorney Blaney to accept the settlement.

Attorney Blaney responded to Attorney Mercer's email at 5:09 p.m. on February 12th, providing additional language to the final paragraph concerning the land access issue. Otherwise, all other terms were acceptable to Appellants. *See* Appellants' Ex. 1 at 2-3; Appellee's Ex. 5 at 2-3.

Attorney Blaney also testified that Appellants changed course during a meeting at her office in March 2017. At that time, Attorney Blaney expected both Appellants to attend and sign the written settlement agreement. However, Mr. Wood attended the meeting alone and expressed that he was "very unhappy" with the terms of the agreement. N.T. Hr'g., 8/16/17, at 122. Mr. Wood "did not complain about any of the specific terms being not what he agreed to." *Id.* Rather, he claimed that Attorney Blaney "threw him under

the bus," and the agreement "was not what he was owed by [Appellee]." **Id.** at 122-23.

During a subsequent telephone call, Attorney Blaney informed Mr. Wood that Appellee would likely file a motion to enforce settlement agreement if Appellants withheld their signatures. Mr. Wood responded that "he expected that" Appellee would attempt to enforce the settlement agreement, but Appellants "weren't going to sign it and . . . they would take their chances" in court. **Id.** at 124.

On March 2, 2018, the trial court entered an order granting Appellee's motion to enforce settlement agreement. Appellants timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed a responsive Rule 1925(a) opinion, explaining that Attorney Blaney had authority to enter into the settlement agreement, and the communications between Attorneys Blaney and Mercer demonstrated the formation of a valid and enforceable settlement agreement.

Appellants now raise six issues for our review:

1. Whether the [trial] court erred by granting [Appellee's] Motion to Enforce Settlement given the facts and evidentiary testimony presented to the [c]ourt[.]

2. Whether the [trial] court erred by finding that the parties entered into an oral settlement agreement as there was no meeting of the minds regarding the leasehold acreage and consideration to be paid for the new oil and gas lease at the heart of the asserted settlement[.]

3. Whether the [trial] court erred in enforcing the asserted oral settlement agreement when [Appellants] had not seen or

reviewed the newly proposed Oil and Gas Lease prior to entering into the asserted oral settlement[.]

4. Whether the [trial] court erred in enforcing the asserted oral settlement agreement when [Appellants] had not seen or reviewed the newly proposed Addendum to the Oil and Gas Lease prior to entering into the asserted oral settlement[.]

[5]. Whether the [trial] court erred by finding that the parties entered into an oral settlement agreement as there was no meeting of the minds regarding numerous material terms of the asserted oral settlement agreement, including no meeting of the minds regarding the following material terms:

a. confidentiality requirements and potential punitive remedies in the event of a breach of confidentiality;

b. a global release of other outstanding claims against [Appellee]; and

c. an agreement to settle [Appellants'] land access issues to provide [Appellants] access to their property in the area of [Appellee's] well pad.

6. Whether the [trial] court erred in upholding the asserted oral settlement agreement when there was no intent for the oral agreement to be operative in the absence of an executed written agreement.

Appellants' Brief at 4-5. Although Appellants' brief lists six issues, they actually present two distinct arguments in opposition to the order granting Appellee's motion to enforce settlement agreement.

First, Appellants contend that the parties to a settlement agreement must come to a meeting of the minds on all terms in order for the agreement to be enforceable. *Id.* at 25. Appellants insist that there was no meeting of the minds on several material terms of its agreement with Appellee, including (1) the amount of acreage Appellee would lease; (2) the amount of

compensation Appellee would pay; (3) the use of Appellee's standard lease form; (4) the addendum terms; (5) the confidentiality provision; (6) the global release of Appellants remaining claims against Appellee; and (7) the resolution of the land access issue. *Id.* at 26, 36, 40, 41, 45, 47. Because the parties did not come to a meeting of the minds regarding these terms, Appellants maintain that this Court must reverse the order granting enforcement. *Id.* at 47.

"The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." ***Step Plan Servs., Inc. v. Koresko***, 12 A.3d 401, 408 (Pa. Super. 2010) (citation omitted).

> Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision. With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record.

*Id.* (citations and quotation marks omitted).

"There is a strong judicial policy in favor of voluntarily settling lawsuits." ***Felix v. Giuseppe Kitchens & Baths, Inc.***, 848 A.2d 943, 946 (Pa. Super. 2004) (citation omitted). "The primary reason that settlement is favored is that it expedites the transfer of money into the hands of a complainant. Further, settlement reduces the burden on and expense of maintaining courts." *Id.* (citations omitted).

In a settlement agreement, "[t]here is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum)." **Step Plan Servs.**, 12 A.3d at 409 (citation omitted). "As with any contract, it is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject-matter, of the agreement." **Mazzella v. Koken**, 739 A.2d 531, 536 (Pa. 1999) (internal quotation marks, citation, and brackets omitted).

"If parties agree upon essential terms and intend them to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date. The intent of the parties is a question of fact which must be determined by the factfinder." **Compu Forms Control, Inc. v. Altus Grp., Inc.**, 574 A.2d 618, 622 (Pa. Super. 1990) (internal quotation marks and citations omitted). "A reviewing court must defer to the findings of the trier of the facts if they are supported by the evidence." **Id.** (citation omitted).

Instantly, Attorney Blaney testified that she informed Mr. Wood about all aspects of the proposed settlement on February 12, 2017:

> We went down step-by-step what the agreement would entail. I told [Mr. Wood] there would be a settlement agreement that was four to five pages that outlined this, but here are the . . . basic terms. That he was waiving all claims against [Appellee] except for the sick cows in exchange for a . . . payment. That . . . meant that all three lawsuits would be dismissed. That all of the back royalties would be paid . . . within forty-five days of executing the agreement, [Appellee] was holding [a] significant amount of

royalties[.]  [T]hat there would be either in the agreement or in the addendum a clause that while . . . neither side was admitting fault, that we would ratify the old lease again so that there was a lease that covered all the way through.

We talked about the need for the agreement to be confidential. What that meant[:] that he couldn't go to the newspaper, I couldn't respond to the calls that I had been getting from the newspaper, he couldn't talk about it in a coffee shop with friends, but that he could discuss the financial terms with both an accountant and an attorney as necessary.  We discussed that [Appellee] would resolve his ability to access this lower field south of the pad.  [Appellants'] preferred access was through a roadway that crossed over the neighbor's property and went to the pad. He wanted to be able to cross that roadway and get to the lower field.  I told him that [Appellee] could not promise that that would be the access without sending somebody out to see it; that we'd make note that was their preferred access, but one way or another we would figure out how he was going to access his field.

And that they would get a new lease; twelve hundred dollars per acre, twelve-and-a-half percent royalty, payment on the lease within forty-five calendar days not business operating days, addendum, same as I had—I had discussed again that we'd already used—I had already used these addendums and negotiated them with [Attorney Mercer] very recently.  And [we] went through what addendums were there.  Told them that there would be no Pugh Clause[3] . . . .  And I told [Mr. Wood] we could go through the exact language of those addendums in detail on Monday.

N.T. Hr'g, 8/16/17, at 101-02.  Following this conversation, Appellants authorized Attorney Blaney to accept the settlement.  *Id.* at 104.

Our review of the record confirms that throughout the evidentiary hearings, Attorney Blaney provided testimony demonstrating Appellants'

---

[3] A Pugh clause provides that "production from a unit including a portion of a leased tract will maintain the lease in force as to all the lands covered by the lease."  *Fremaux v. Buie*, 212 So.2d 148, 149 n.1 (La. Ct. App. 1968) (citations omitted).

awareness of the material terms of the settlement agreement. Appellee also submitted exhibits, including Attorney Blaney's phone records and the notes she took contemporaneously during her telephone conversations with Appellants, which supported Attorney Blaney's testimony. *See* Appellee's Ex. 3, 4.

To the extent Appellants rely on their own testimony that conflicted with that of Attorney Blaney, the trial court specifically found Attorney Blaney credible. *See* Trial Ct. Op. at 8. The record supports the court's findings, and we defer to those findings. *See Compu Forms Control*, 574 A.2d at 622. Therefore, the court properly determined that the parties came to a meeting of the minds for all material terms, and the settlement agreement was enforceable. *See Mazzella*, 739 A.2d at 536.

In their second argument, Appellants contend that they "did not intend to be bound by the terms of the oral settlement without the subsequent memorialization and execution of the final settlement documents." Appellants' Brief at 49. Appellants rely on *Wilson v. Pennsy Coal Co.*, 112 A. 135, 136 (Pa. 1920), for the proposition that oral agreements are enforceable only where it is "shown, by the acts or declarations of the parties, that they intended the agreement to be operative before execution, and without regard to the writing."[4] *Id.* at 48. "Without some affirmative action demonstrating [Appellants'] intent to be bound by the asserted oral

---

[4] *Wilson* involved an oral agreement to convey real estate, "where the lease proposed would not have been valid without writing." *Wilson*, 112 A. at 136.

agreement, the asserted agreement should be viewed only as an offer of settlement and should not be enforced." *Id.* at 50.

"Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement." *Step Plan Servs.*, 12 A.3d at 409 (citation omitted). "This is true even if the terms of the agreement are not yet formalized in writing. Pursuant to well-settled Pennsylvania law, oral agreements to settle are enforceable without a writing." *Id.* (citation omitted); *see also Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 138 (Pa. 1999) (reiterating that, "Where the parties have agreed orally to all the terms of their contract, and a part of the mutual understanding is that a written contract embodying these terms shall be drawn and executed by the respective parties, such oral contract may be enforced, though one of the parties thereafter refuses to execute the written contract" (citation omitted)).

Instantly, the settlement agreement contained the requisites for a valid contract, including an offer, acceptance, and consideration. *See Step Plan Servs.*, 12 A.3d at 409. More specifically, Appellee agreed to make a payment to Appellants. In exchange, Appellants agreed to, among other things, a global release of multiple claims against Appellee. The parties also agreed to execute a new lease whereby Appellee would pay Appellants for the right to extract natural resources from Appellants' property.

Despite the fact that the parties did not immediately memorialize the oral agreement in writing, their subsequent behavior demonstrated their

- 11 -

intent to be bound by the oral agreement. Attorneys Mercer and Blaney participated in a conference with the court on February 13, 2017, confirming that the parties had reached a settlement. *See* N.T. Settlement Conference, 2/13/17, at 2. Attorney Mercer indicated that he would be "providing a copy of the settlement agreement . . . and release to Attorney Blaney" within the next two days, and "all of the terms of the agreement will be fulfilled by the end of this week."[5] *Id.* Further, counsel did not express any concern when the court announced that it would cancel jury selection, which it had scheduled for the next day. *Id.* at 4.

Based upon the foregoing, the oral settlement agreement was enforceable in the absence of a formally executed writing. *See Shovel Transfer & Storage*, 739 A.2d at 138; *Step Plan Servs.*, 12 A.3d at 409. Accordingly, we affirm the order granting Appellee's motion to enforce settlement agreement.

Order affirmed.

---

[5] The trial court observed that, "Given the timing of the settlement agreement, with trial to start in less than two days, it would have been difficult for the parties to execute a written settlement agreement before trial." Trial Ct. Op. at 9.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>04/17/2019</u>