J-A04006-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ESTATE OF: CASIMIR J. SZAFARA, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: KRISTINA L. SZAFARA | No. 1256 EDA 2020 |

Appeal from the Order Entered February 4, 2020
In the Court of Common Pleas of Bucks County
Orphans' Court at No: 2017-E0254

BEFORE:  STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:          **FILED SEPTEMBER 08, 2021**

Appellant, Kristina L. Szafara ("Kristina"), appeals *pro se* from the February 4, 2020 orphans' court order granting the petition of Appellee Steven Szafara ("Steven"), individually, and as co-executor of the Estate of Casimir J. Szafara, deceased, to enforce the parties' settlement agreement and remove Kristina as co-executor.[1]  We affirm the order and grant Steven's motion to correct the docket.[2]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  The settlement agreement, among other things, authorized distributions from the estate.  The order is final and appealable under Pa.R.A.P. 342(a)(1).

[2]  This Court's docket refers to Steven as a "participant".  Because the order before us resolved Steven's petition, individually, and as a co-executor, to
*(Footnote Continued Next Page)*

This matter was initiated when Steven [Szafara], as co-executor of the estate of his father, Casimir J. Szafara (the "Estate"), filed a petition for adjudication and an estate account audit on May 3, 2017. The Estate had been opened on January 12, 2005. Steven and his sister Kristina had been appointed as co-executors of the Estate on April 11, 2011, subsequent to the death of their brother, Mark, who had been appointed as the original executor of the Estate pursuant to their father's will.

Kristina filed objections to Steven's petition for adjudication on June 6, 2017, through her then-counsel, Obadiah English. Kristina's objections included thirty-eight (38) paragraphs, and essentially alleged that as accountant, Steven failed to account for or recover various Estate assets, including, *inter alia*, loans, tangible property and financial instruments. Further, Kristina's objections challenged payments made for commissions and legal services incurred in the administration of the Estate by her deceased brother Mark, the commissions paid to the executor, and the accountants request to the court to release him from any liability to the Estate.

On June 20, 2018, Mr. English filed a petition to withdraw his appearance for Kristina.

An evidentiary hearing on Kristina's objections as well as on Mr. English's petition to withdraw was held on November 28, 2018, after which a decree was issued on December 5, 2018. Per the decree, this court adjudicated some of the objections and granted Mr. English's petition to withdraw. Additionally, due to the sheer volume of litigation issues raised by the parties, this court appointed a well-experienced, highly respected, and independent orphans' court practitioner, Richard D. Magee, Jr., as Master. The mission of the Master was to do his best to resolve as many of the myriad issues as possible. This court's decree appointing Mr. Magee appropriately set forth his duties and the parties' remedies, should the Master be unsuccessful in achieving some or all of his goals.

On or around December 18, 2018, Kristina retained the services of another attorney, Andrew Cotlar, Esquire. Mr. Cotlar,

---

enforce the parties' settlement agreement, Steven asserts that he should be identified as an Appellee. We agree and direct the prothonotary to identify Steven as an Appellee as well on the docket.

however, filed a petition to withdraw on or around January 28, 2019. After a rule absolute was issued on March 12, 2019, an order was issued March 18, 2019 permitting Mr. Cotlar to withdraw, and he withdrew his representation on March 25, 2019.

On May 8, 2019, the court-appointed Master, Mr. Magee, conducted an extensive day-long settlement conference. In attendance were Kristina, *pro se*, Steven and his counsel, and counsel for Andrea, sister-in-law to Kristina and Steven, and widow of Mark. Andrea did not personally attend due to health reasons, but she was available by telephone.

After the conclusion of the settlement conference, the parties voluntarily entered into a global settlement of the outstanding estate matters and executed a written Settlement Terms Sheet ("Settlement Agreement"). They also agreed upon the steps necessary to effectuate the terms and conditions of the agreement, which included Steven and Kristina signing various documents, including the federal and state 2018 fiduciary estate tax returns, making a claim for lost savings bonds, issuing partial estate distribution checks for Seventy-Five Thousand Dollars ($75,000.00) to each of the three (3) Estate beneficiaries, and sending a letter to Merrill Lynch instructing which securities were to be liquidated in order to raise the case for the issuance of the $75,000.00 checks.

Several days after execution of the written Settlement Agreement by all parties, Kristina apparently experienced misgivings, and on the evening of May 11, 2019, she faxed a letter to Mr. Magee requesting the voiding of the Agreement, and that the praecipe withdrawing her objections that had been agreed upon at the settlement conference not be filed with the court. Kristina alleged in her letter that she had signed the Settlement Agreement as a result of duress, undue influence, lack of even-handedness, lack of informed consent and due to the Master's alleged lack of impartiality. She then faxed a second letter to the court on May 13, 2019, with the same claims and elaboration of her complaints against the Master, Mr. Magee.

Mr. Magee then submitted his Master's Report on June 4, 2019, in which he refuted all of Kristina's complaints and concluded that the Settlement Agreement 'represents an enforceable and binding agreement which was entered into voluntarily, willingly, and freely by the parties and counsel, including Kristina,' and that the 'supporting documentation to

facilitate the execution of the terms of the Agreement was also done voluntarily, willingly, and freely buy the parties and counsel.' He then recommended in the alternative that in the event the court were to conclude that the agreement is not binding, the court should 'enter an adjudication of the pending objections and account consistent with the Agreement, including of the pending objections, with prejudice, filed by Kristina.'

Orphans' Court Opinion, 5/19/20, at 1-4 (footnotes omitted).

On August 6, 2019, Steven filed a petition to enforce the Settlement Agreement. Steven's petition also sought removal of Kristina as co-executor pursuant to 20 Pa.C.S.A. § 3182(1) and (5). The orphans' court conducted hearings on the petition on September 6, 2019, and January 28, 2020. On February 4, 2020, the trial court issued the order on appeal, in which it confirmed that the Settlement Agreement is valid and binding; that all of Kristina's prior objections were withdrawn with prejudice; and that Kristina was removed as co-executor. This timely[3] appeal followed.

Kristina presents four questions for review:

1. Is the [Settlement Agreement] from the Master's meeting of May 8, 2020, a valid and binding settlement agreement?

2. Are [Kristina's] 'Objections to the First and Final Account of Steven J. Szafara' withdrawn?

3. Is [Kristina] removed as co-executor of the will of Casimir J. Szafara, deceased?

4. Was [Kristina] deprived of 'liberty and property without due process of law' (U.S. CONST. AMEND. V; U.S. CONST. AMEND XIV, § 1).

---

[3] The certified docket reflects that notice of entry of the orphans' court order, pursuant to Pa.O.C. Rule 4.6, was filed on February 5, 2020. Kristina filed this appeal thirty days later, on March 6, 2020.

- 4 -

Kristina's *Pro Se* Brief, at 18.

Our review of an orphans' court order is deferential. ***In re Estate of Leipold***, 208 A.3d 507, 510 (Pa. Super. 2019). We must determine whether the orphans' court's decision is free of legal error, and whether the record supports the court's factual findings. ***Id.*** Credibility of the witnesses is within the province of the orphans' court, and we will not reverse credibility determinations absent an abuse of discretion. ***Id.*** Our standard for reviewing questions of law is *de novo*, and our scope of review is plenary. ***Id.***

The law favors settlement agreements. ***Step Plan Servs., Inc. v. Koresko***, 12 A.3d 401, 408-09 (Pa. Super. 2010). Where a settlement agreement contains all the requisites of a binding contract, a court will enforce it. ***Id.*** Creation of an enforceable contract requires that the parties manifest an intent to be bound to terms that are sufficiently definite, and exchange consideration. ***Johnston the Florist, Inc. v. TEDCO Constr. Corp.***, 657 A.2d 511, 516 (Pa. Super. 1995) (*en banc*). Here, in essence, the parties agreed that Kristina would withdraw her objections to Steven's petition for adjudication, with prejudice, in exchange for the terms mutually agreed upon at the May 18, 2019 settlement conference. Kristina manifested her intent to be bound by signing a settlement term sheet and a praecipe to withdraw her objections. Regardless, Kristina now claims that she agreed to the Settlement Agreement under duress.

"[W]e have long defined duress as that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness." *Radon Constr., LLC v. Land Endeavor 0-2, Inc.*, 221 A.3d 654, 659 (Pa. Super. 2019) (internal citations and quotation marks omitted), *appeal denied*, 229 A.3d 913 (Pa. 2020). "[A] party who has reasonable opportunity to consult with counsel before entering a contract cannot later invalidate it by claiming duress." *Id.* at 659-60. Kristina was *pro se* at the settlement conference and therefore is not precluded from asserting duress based upon consultation with counsel. Regardless, the orphans' court found her assertions of duress lacking in credibility. The orphans' court also credited the Master's testimony that Kristina was under no obvious duress and freely chose to enter into the settlement agreement.

Our review of Kristina's *pro se* brief, which is often incoherent and almost entirely lacking in citations to pertinent legal authority, reveals that her assertion of duress underlies her first question presented. Indeed, the majority of her *pro se* brief is dedicated to establishing that she would not have agreed to the settlement if she had been treated fairly at the settlement conference. Resolution of this issue tuns on the orphans' court's assessment of the credibility of Kristina versus that of the other testifying witnesses, including the Master. We have reviewed the record, the applicable law, the parties' briefs, and the orphans' court's opinion. We conclude that the

orphans' court's May 19, 2020 opinion, at pages 15 through 21, thoroughly and accurately addresses Kristina's assertions of duress. We note the Master's testimony that he reviewed all of Kristina's objections with her and made sure they were addressed in the parties' Settlement Agreement. N.T. Hearing, 9/6/19, at 22, 62. We reject Kristina's first argument based on the findings of fact and credibility determinations set forth on those pages. The record supports the orphans' court's findings, and we discern no basis for concluding that the court abused its discretion in finding Kristina not credible and the other witnesses credible. We direct that a copy of the orphans' court's May 19, 2020 opinion be filed along with this memorandum.

Kristina's second question presented—whether her objections were withdrawn—is not addressed anywhere in her brief. Therefore, she has waived it. Pa.R.A.P. 2119(b); *Estate of Haiko v. McGinley*, 799 A.2d 155, 161 (Pa. Super. 2001) (holding that failure to support an argument with citation to legal authority or reasoned analysis of law results in waiver).

The same goes for her third argument, relating to her removal as co-executor. She cites the pertinent statute but provides no analysis of why her removal was inappropriate. Section 3182 provides:

> The court shall have exclusive power to remove a personal representative when he:
>
> (1) is wasting or mismanaging the estate, is or is likely to become insolvent, or has failed to perform any duty imposed by law; or
>
> [...]

- 7 -

(5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office.

20 Pa.C.S.A. § 3182(1), (5). Removal of an executrix rests within the discretion of the orphans' court. *In re Estate of Mumma*, 41 A.3d 41, 49 (Pa. Super. 2012). Here, the record reflects that Kristina's consistent lack of cooperation with her own attorneys and the other parties greatly prolonged the administration of the Estate. Further, the Estate had tax obligations it could not meet without liquidating assets. Kristina's continued lack of cooperation was making that impossible. Kristina's challenge to her removal as co-executor, even if preserved for appeal, would not merit relief.

Finally, Kristina has failed to support her due process argument with citation to pertinent authority, thereby waiving it. Pa.R.A.P. 2119(b); *Estate of Haiko*, 799 A.2d at 161. We observe that Kristina's lack of counsel at the hearings on the petition to enforce the settlement agreement appears to be due to her own inability to find counsel with whom she could get along. Nothing in the record supports a conclusion that the trial court prevented Kristina from procuring counsel.

For the foregoing reasons, all of Kristina's assertions of error are waived and/or lacking in merit.

Order affirmed. Motion to correct the docket granted. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *9/8/2021*

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:     ESTATE OF CASIMIR J. SZAFARA,   :    NO. 2017-E0254
           Deceased                    :
                                                 1256 EDA 2020

## OPINION

## I. INTRODUCTION

Not unlike much of the protracted litigation we see in Orphans' Court, this case is illustrative of and driven by family dysfunction of unknown etiology. Appellant Kristina L. Szafara ("Kristina" or "Appellant") has appealed from this Court's Order of February 4, 2020, which granted the Petition filed by Kristina's brother, Steven J. Szafara ("Steven") to Enforce Settlement Agreement and to Remove (Kristina as) Co-Executor.

## II. PROCEDURAL BACKGROUND

A recap of the pertinent procedural background reveals that this matter was initiated when Steven, as Co-Executor of the Estate of his father Casimir J. Szafara (the "Estate"), filed a Petition for Adjudication and an Estate Account Audit on May 3, 2017. The Estate had been opened on January 12, 2005. Steven and his sister Kristina had been appointed co-executors of the Estate on April 11, 2011, subsequent to the death of their brother, Mark, who had been appointed as the original Executor of the Estate pursuant to their father's Will.

Kristina filed Objections to Steven's Petition for Adjudication on June 6, 2017, through her then-counsel, Obadiah English. Kristina's Objections included thirty-eight (38) paragraphs, and essentially alleged that as Accountant, Steven failed to account for or recover various Estate assets, including, *inter alia,* loans, tangible property and financial instruments. Further, Kristina's objections challenged payments made for commissions and legal services incurred in the administration of the Estate and payment of estate taxes, and took exception to the administration

1

of the Estate by her deceased brother Mark, the commissions paid to him as Executor, and the Accountant's request to the Court to release him from any liability to the Estate.

On June 20, 2018, Mr. English filed a petition to withdraw his appearance for Kristina.

An evidentiary hearing on Kristina's Objections as well as on Mr. English's petition to withdraw was held on November 28, 2018, after which a Decree was issued on December 5, 2018. Per the Decree, this Court adjudicated some of the objections and granted Mr. English's petition to withdraw. Additionally, due to the sheer volume of litigation issues raised by the parties, this Court appointed a well-experienced, highly respected, and independent Orphans' Court practitioner, Richard D. Magee, Jr., as Master. The mission of the Master was to do his best to resolve as many of the myriad issues as possible. This Court's decree appointing Mr. Magee appropriately set forth his duties and the parties' remedies, should the Master be unsuccessful in achieving some or all of his goals.

On or around December 18, 2018, Kristina retained the services of another attorney, Andrew Cotlar, Esquire. Mr. Cotlar, however, filed a petition to withdraw on or around January 28, 2019. After a Rule Absolute was issued on March 12, 2019, an Order was issued on March 18, 2019 permitting Mr. Cotlar to withdraw, and he withdrew his representation on March 25, 2019.

On May 8, 2019, the court-appointed Master, Mr. Magee, conducted an extensive day-long settlement conference. In attendance were Kristina, *pro se*;[1] Steven and his counsel, and counsel

---

[1]    While it is unfortunate that Kristina was not represented by counsel during the settlement conference and most recent evidentiary hearings, her failure to have counsel was her own decision, voluntary and knowing. She is not only a college graduate, but according to her testimony, she received a doctorate in organizational behavior from Cornell University is 2003.
    Throughout the proceedings, and indeed, during this appellate process as well, we have remained mindful to demonstrate patience, to be instructive, and to permit reasonable leeway to Kristina since she was acting *pro se*. All this, despite repeated instances of failure to follow appropriate procedural rules and constraints, and despite her lack of organization and multiple instances of duplicative filings and duplicative arguments. Of course, we recognize the general principle that a *pro se* litigant must comply with the procedural and evidentiary rules set forth in Pennsylvania law. *See, e.g.,* Com v. Hoskins 200 A.3d 580 (Pa. Super. 2018).

2

for Andrea, sister-in-law to Kristina and Steven, and widow of Mark. Andrea did not personally attend due to health reasons, but she was available by telephone.

At the conclusion of the settlement conference, the parties voluntarily entered into a global settlement of the outstanding estate matters and executed a written Settlement Terms Sheet ("Settlement Agreement"). They also agreed upon the steps necessary to effectuate the terms and conditions of that agreement, which included Steven and Kristina signing various documents, including the federal and state 2018 fiduciary estate tax returns, making a claim for lost savings bonds, issuing partial estate distribution checks for Seventy-Five Thousand Dollars ($75,000.00) to each of the three (3) Estate beneficiaries, and sending a letter to Merrill Lynch instructing which securities were to be liquidated in order to raise the cash for the issuance of the $75,000.00 checks.

Several days after execution of the written Settlement Agreement by all parties, Kristina apparently experienced misgivings, and on the evening of May 11, 2019, she faxed a letter to Mr. Magee requesting the voiding of the Agreement, and that the Praecipe withdrawing her Objections that had been agreed upon at the settlement conference not be filed with the Court. Kristina alleged in her letter that she had signed the Settlement Agreement as a result of duress, undue influence, lack of even-handedness, lack of informed consent and due to the Master's alleged lack of impartiality. She then faxed a second letter to the Court on May 13, 2019, with the same claims and elaboration of her complaints against the Master, Mr. Magee.

Mr. Magee then submitted his Master's Report on June 4, 2019, in which he refuted all of Kristina's complaints and concluded that the Settlement Agreement "represents an enforceable and binding agreement which was entered into voluntarily, willingly and freely by the parties and counsel, including Kristina," and that the "supporting documentation to facilitate the execution of the terms of the Agreement was also done voluntarily, willingly and freely by the parties and

3

counsel." He then recommended in the alternative that in the event the Court were to conclude that the Agreement is not binding, the Court should "enter an Adjudication of the pending objections and account consistent with the Agreement, including the dismissal of the pending objections, with prejudice, filed by Kristina."

The Master's Report thoroughly addressed and resolved each of Kristina's objections to the Estate Audit, including her complaints regarding improper or inaccurate fiduciary tax returns; failure to properly account for, identify and value Estate assets; failure to pursue an account and surcharge against the original executor Mark Szafara and his commission of $10,000.00; failure to reimburse her for her costs incurred as co-executor; failure to provide an account from December 2010 through June 1, 2011. The Master's Report also addressed Kristina's challenge to the reasonableness of the legal fees charged by Steven's counsel.

The Report further identified the remaining outstanding issues not related to Kristina's Objections, which included the payment by Kristina of outstanding legal fees of Mr. English, of Mr. Cotlar and of the Master, and Andrea's request for a preliminary distribution of $75,000.00 to each beneficiary so that she could provide for the educational needs of her two adult children. The Master noted that Mr. English had submitted a bill on April 12, 2019 for Six Thousand Four Hundred Eighty-Four Dollars and Ninety-Seven Cents ($6,484.97) for his legal services, which was ultimately settled by agreement between the Estate and Mr. English for Three Thousand Dollars ($3,000.00), but that no supporting information was supplied by Kristina or Mr. Cotlar to substantiate or verify his fee of One Thousand Five Hundred Five Dollars and Twenty-Five Cents ($1,505.25). The Master therefore recommended that Kristina be held responsible for Mr. Cotlar's outstanding invoice. The Report observed that this Court's Decree of November 29, 2018 provided that the Master was to be reimbursed from Estate funds, at his usual and customary hourly rate.

4

Finally, as to Andrea's request for a preliminary distribution of $75,000.00 to each beneficiary, the Master noted that there was in excess of Six Hundred Thousand Dollars ($600,000.00) in Estate assets, and that a distribution of Two Hundred Twenty-Five Thousand Dollars ($225,000.00) ($75,000.00 to each of the three designated beneficiaries) would not unduly burden the Estate.

On July 3, 2019, despite the Settlement Agreement, Kristina filed what she called a "Motion for Pleading," which was essentially a motion for a hearing on her Objections to the First and Final Accounting, as well as on her litany of complaints concerning the conduct of the settlement conference and the ultimate resolution of the issues in dispute. Pursuant to our Order of August 21, 2019, a hearing was scheduled for September 6, 2019.

However, on August 6, 2019, Steven had filed a Petition to Enforce the Settlement Agreement and to Remove Kristina as Co-Executor of the Estate. The Petition asserted that the parties had arrived at a global resolution of all issues in dispute at the settlement conference, and that the Settlement Term Sheet signed by the parties on May 8, 2019 represented a valid, binding and enforceable contract. The Petition further requested the removal of Kristina as Co-Executor pursuant to 20 Pa.C.S. §3181 (1) and (5), due to her refusal to participate in the administration of the Estate and her failure to cooperate and communicate with Steven or his counsel, which was continuing to impair the administration of the Estate.

Accordingly, on August 21, 2019, this Court issued an Order directing that the hearing previously scheduled for September 6, 2019 "shall be limited to the respective parties' evidentiary presentations as to the Petition to Enforce Settlement Agreement filed by Steven Szafara on August 6, 2019."

5

On August 23, 2019, Kristina filed an Answer to the Petition, denying Steven's claims, and on September 5, 2019, the day before the scheduled hearing, she filed what she called a "Motion for Summary Judgment of the Petition to Enforce Settlement Agreement and to Remove Co-Executor."

On September 6, 2019, this Court held the first of two days of evidentiary hearings on Steven's Petition to Enforce the Settlement Agreement and to Remove Kristina as Co-Executor of the Estate. At the outset of the hearing, this Court reiterated that the purpose of the hearing was limited to the issue of the Petition to enforce the settlement agreement and to remove Kristina as Co-executor. We further determined that since Kristina's Motion for Summary Judgment had just been received and was untimely, and since the same issues would be addressed in the imminent evidentiary hearing, the Motion should be denied. (*See* N.T. 9/6/2019, pp. 3, 7-8.)

Mr. Magee was the sole witness to testify at the hearing on September 6, 2019. His extensive testimony on direct and cross examination consisted of explanations and descriptions of the settlement conference he conducted on May 8, 2019, and his conclusion that a valid global settlement of all of the outstanding issues had been reached by the parties. He consistently, credibly, and persuasively rebutted Kristina's questions suggesting or implying that the conference had been coercive in nature, and he reiterated that the Settlement Agreement was a controlling document that resolved all of her objections. (*See* e.g., N.T. 9/6/2019, pp. 74-75, 83-84.) At the conclusion of the hearing on September 6, 2019, the Court directed the parties to file a Motion for a Second Hearing in order to permit Kristina to complete her cross-examination of Mr. Magee, and to present her own case with regard to the disputed Settlement Agreement.

On September 30, 2019, Kristina filed an "Answer" to Steven's September 12, 2019 Motion for a Second Hearing, which requested that his motion be denied. She also

6

contemporaneously filed a "Motion for Hearing on her Summary Judgment of the Petition to Enforce Settlement Agreement and to Remove Co-Executor," in which she apparently argued that the August 6, 2019 Petition to Enforce Settlement filed by Steven was somehow untimely filed.

On November 26, 2019, an Order was issued by this Court, scheduling the second hearing for January 28, 2020.

On December 10, 2019, Kristina filed a "Praecipe for Disposition of Motion for Summary Judgment of Petition to Enforce Settlement Agreement and to Remove Co-Executor and for Disposition of Motion for Hearing on Summary Judgment of the Petition to Enforce Settlement Agreement and to Remove Co-Executor."

On January 28, 2020, this Court conducted the second day of hearings on the issue of the enforceability of the Settlement Agreement, during which cross-examination of Mr. Magee by Kristina was concluded. Kristina subsequently testified on her own behalf.[2] At the conclusion of that hearing, this Court concluded that the Settlement Agreement entered into by the parties on May 8, 2019, was, indeed, a valid and binding contract, and we thereafter issued our Order of February 4, 2020, which granted the Petition filed by Steven to Enforce Settlement Agreement and to Remove Kristina as Co-Executor.

In accordance with relief which this Court determined to be appropriate based upon the credible evidence of record, this Court's Order of February 4, 2020 stated as follows:

---

[2] On January 15, 2020, Kristina issued subpoenas to attend and testify to Steven and Andrea. In response, counsel on behalf of Steven filed a Motion to Quash on January 27, 2020, alleging that he had just received the subpoena on January 24, 2020, and that the documents requested in the subpoena were already in the possession of Kristina. At the inception of the hearing on January 28, 2020, this Court noted that the Motion to Quash had just been received the day before, and when we queried Kristina about the relevance and necessity for the subpoenas, she replied that she was "unclear that [she] actually (did) have all the relevant documents" and that she thought she actually had "sufficient things that the Court ... may find determinative without going there." The Court therefore held that, as a matter of efficiency, Kristina could subsequently raise the issue of missing documents if and when she believed she was lacking documentation, and the issue would be litigated at that time. (See N.T. 1/28/2020, pp. 3-8.) The issue was not raised again.

7

1. The "Settlement Term Sheet" entered into on May 8, 2019, by Kristina, Steven and Tracy L. Cassel-Brophy, Esquire on behalf of Andrea Szafara, Individually and as Executor of the Estate of Casimir Szafara (the "Settlement Agreement"), is a valid and binding settlement agreement upon all parties, including Kristina;

2. Kristina's Objections to the First and Final Account of Steven J. Szafara are withdrawn with prejudice and the Account is accordingly confirmed;

3. The administration of the Estate of Casimir J. Szafara has been approved by all parties, including Kristina, through May 8, 2019, pursuant to the terms of the Settlement Agreement;

4. Kristina is removed as Co-Executor of the Will of Casimir J. Szafara, Deceased, effective January 28, 2020;

5. The Register of Wills is directed to issue amended Letters Testamentary to Steven who shall continue as sole Executor of the Will of Casimir J. Szafara, Deceased;

6. Various paragraphs of the Settlement Agreement are modified to account for the appointment of Steven as sole Executor of Casimir J. Szarara's Will and the actions necessary to effectuate the distribution of the assets of Casimir's Estate; and finally

7. Steven shall file a Schedule of Distribution pursuant to Bucks County O.C. Rule 2.9A when the administration of the Estate is complete.

On February 18, 2020, Kristina filed a "Motion for Reconsideration of the Rulings on the Petition to Enforce Settlement Agreement and to remove Co-Executor." In this motion, Kristina claimed, *inter alia,* that the Master had misused his authority and influence to obtain her consent and signature to the Settlement Term Sheet, which allegedly disfavored her and did not contain terms she sought, and that the Court had not considered her letters of May 11, 2019 and May 13, 2019, renouncing and withdrawing her consent to the settlement agreement, or the "strong negative and coercive effect on Kristina of courtroom behavior that exceeded generally acceptable boundaries by Attorneys for the Petitioner." Kristina also claimed that the Court had erred in scheduling the hearing of September 6, 2019 on August 21, 2019, which did not provide her sufficient time to file a Motion for Summary Judgement in response to Steven's Petition to Enforce the Settlement Agreement filed on August 6, 2019. (*See* Motion for Reconsideration, 2/18/2020.)

On March 2, 2020, Kristina filed a document entitled "Objections of Kristina Szafara to Proposed Order on Petition to Enforce Settlement Agreement and to Remove Co-Executor." In this document, which apparently conflates the proposed form of order attached to the August 6,

8

2019 Petition to Enforce with this Court's actual Order of February 4, 2020, Kristina in relevant part "denied consent and object[ed] to the proposed relief requested in the proposed 'Order' of Steven J. Szafara of February 3, 2020." She claimed that Steven, as Petitioner, had not carried the necessary burden of proof to conclude that the Settlement Agreement was a valid and binding contract, or that "the Estate would benefit by distribution of the assets of the Estate at this time," or that Steven "merits the authority to liquidate assets at this time or any other for any purpose and certainly not at his sole and absolute discretion." She further claimed, in apparent reference to our February 4, 2020 Order, that "alteration of a subsection of the Master's Report has no legal force" and she "objects to attempting to transform this writing into a legally enforceable document by inclusion in a proposed Order." We determined that all of the aforementioned post-February 4, 2020 documents, and motions filed by Kristina were not only untimely, duplicative, and/or procedurally improper, but were, as matters of substance, without merit.

On March 6, 2020, Kristina filed a Notice of Appeal to the Superior Court of Pennsylvania from our Order of February 4, 2020, and on March 9, 2020, she filed her "Statement of Error" which is discussed below.

Finally, on March 10, 2020, even after filing her Notice of Appeal to the Superior Court, Kristina filed an "Amended Motion for Reconsideration of the Rulings on the Petition to Enforce Settlement Agreement and to Remove Co-Executor." As an apparent supplement to her attached February 18, 2020 Motion for Reconsideration, Kristina additionally claimed, *inter alia,* in this "amended motion" that Steven and Andrea had "misinformed" the Court at the hearing on September 6, 2019, and that the Master had not accepted or "misreported the existence and content of evidence submitted to him" at the settlement conference on May 8, 2019. She also generally complained that, in limiting our ruling to the issue of her acceptance of the Settlement Agreement,

9

the Court foreclosed her ability to challenge the validity and accuracy of the Master's Report and the completeness of that Agreement, and that she had in essence been limited in her ability to testify completely by the Court's instructions to her as *pro se* witness and opposing counsel's objections during her testimony. This Amended Motion was procedurally improper as well as meritless.

## III. STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

As noted above, Kristina submitted a prolix six-page "Statement of Error" on March 9, 2020, that included an additional nineteen pages of Exhibits. For brevity, her "Statement of Error" is not reproduced *verbatim* herein. We summarize it as follows:

Kristina begins her "Statement of Error" by stating that she "lacks sufficient information to properly evaluate the transactions reflected in the First and Final Account of Steven J. Szafara for his administration of the Estate, the evidence and process of the Court hearings of November 28, 2018, September 6, 2019, and January 28, 2020, the evidence and process of the Master's Meeting of May 8, 2019, and the Orders of the Court of November 29, 2018, and February 4, 2020." She then states that "in order to preserve her rights," she "herein presents issues that were not considered in the Orders of the Court, requests that the rulings of the Court be reconsidered and stayed, that the Court consider relevant surcharges upon past and current Executors, that the Court consider fee reductions for the attorneys of Steven J. Szafara as Accountant and co-Executor of the Estate, that the Court award Kristina recompense for her proportionate share of the overpaid taxes, interest and penalties, and that the Court consider the scope of and refund the costs of Kristina's loans, work, and litigation for the Estate."

She then articulates fifteen (15) paragraphs that contain bald and unsubstantiated claims that essentially attempt to relitigate her objections to the First and Final Accounting and to the

10

Master's Report. For example, she claims, without any specificity, that the first Executor of the Estate, her deceased brother Mark Szafara, did not adequately collect and distribute Estate assets or adequately administer the Estate. She claims that Mark comingled assets, did not file an Inventory, caused loss of value of Estate assets, and did not pay Estate taxes. She then essentially repeats those claims against her Co-Executor and other brother, Steven Szafara.

Kristina then apparently incorporates her "Motion for Reconsideration of the Rulings on the Petition to Enforce Settlement Agreement and to Remove Co-Executor" into her "Statement of Error," along with additional bald allegations that both Steven and Andrea Szafara "misinformed the Court" at the November 28, 2018 hearing; that the Master "made no clear demarcation between his Court-mandated and Court-enforced actions and the supposedly voluntary portion of the Meeting that resulted in the Settlement Term Sheet;" that the "Master did not accept all the evidence offered to him;" and that he "misreported the existence and content of evidence submitted to him." She also essentially claims that the instructions provided by this Court limiting the scope of the hearings on September 6, 2019 and January 28, 2020 to the issue of her "supposed agreement to the Settlement Term Sheet" prevented her from examining the validity and accuracy of the Master's Report or the completeness of the Settlement Term Sheet.

## IV. DISCUSSION

As noted above, Kristina's "Statement of Error" is generally vague, and raises a number of issues that are irrelevant and unrelated to the issue of whether a valid, binding and enforceable settlement agreement was reached at the conclusion of the Master's conference on May 8, 2019. We have nevertheless discerned from her Statement, as well as from her testimony at the September 6, 2019 and January 28, 2020 hearings, that she is essentially arguing that she did not voluntarily and intelligently enter into the Settlement Agreement, and that she had, but was denied,

11

the ability to appeal to the Orphans' Court from the Master's Report.[3] We find no merit in any of these allegations.

As previously noted, a hearing was held on November 28, 2018, to address Objections which Kristina had lodged in response to the Petition for Adjudication which her brother and Co-Executor had filed on May 3, 2017 for the Estate of their deceased father, Casimir Szafara, which had been opened twelve (12) years earlier. When it became clear at that hearing that the parties could not reasonably cooperate and resolve their issues in a mutually beneficial manner, this Court, pursuant to our Decree of December 5, 2018, appointed a reputable and well-established attorney, Mr. Magee, as Master to oversee and seek a resolution of the disputes raised by Kristina.

Mr. Magee eventually conducted a thorough settlement conference on May 8, 2019, at the conclusion of which the parties, including Kristina, entered into a settlement agreement and signed all of the necessary documentation to effectuate that settlement agreement. Mr. Magee consistently testified that Kristina was an active and cooperative participant in the proceedings, and that she had specifically recognized the nominal amounts of the tax payments involved, expressed a desire for an amicable resolution, and agreed throughout the conference to withdraw her objections. (*See*, e.g., N.T. 9/6/19, pp. 21-22, 31, 36, 48, 55, 75-76; N.T. 1/28/20, pp. 20-21, 24.)

In her attempt to establish that there was no valid Settlement Agreement and that she did not knowingly, voluntarily or intelligently enter into that agreement, Kristina has claimed, and has attempted to convince this Court that, despite her substantial involvement and cooperation at the settlement conference and despite her uncontested signature on the various documents necessary

---

[3] We are cognizant that "the number of issues raised in a Rule 1925(b) statement does not, without more, provide a basis upon which to deny appellate review," Elser v. Brown & Williamson Tobacco Corp., 938 A.2d 417, 427-28 (Pa. 2007). We have therefore attempted to identify and address any relevant Issue(s) Kristina may have attempted to raise in her appeal.

12

to effectuate the settlement, including the withdrawal of her objections, she did not believe that a settlement had been reached, and believed instead that she had the ability to pursue an appeal from the Master's subsequent recommendations. (*See, e.g.,* N.T. 1/28/20, p. 31: "The question is whether I understood that distinction at the time.")

Kristina's arguments are unconvincing; her claims in this appeal are untenable and without merit. After extensive cooperation at the settlement conference conducted by the Master, including with her brother, her sister-in-law, their counsel, and the Master, all of whom developed a global solution to this drawn out litigation which resulted in the Settlement Agreement, Kristina has, for unknown reasons, returned to the recalcitrant and obstinate behavior she has exhibited throughout the vast majority of this litigation, with the obvious desire to prolong and continue it, indefinitely. This strategy cannot, and will not, stand.

The legal standard to overturn a settlement agreement, which is favored in the law, is stringent. The Superior Court of Pennsylvania has repeatedly observed that

> Settlement agreements are enforced according to principles of contract law. Pulcinello v. Consolidated Rail Corp., 784 A.2d 122, 124 (Pa.Super. 2001). Courts will enforce a settlement agreement if all its material terms are agreed upon. Century Inn, Inc. v. Century Inn Realty, 516 A.2d 765, 767 (Pa.Super. 1986). A settlement agreement will not be set aside absent a clear showing of fraud, duress or mutual mistake. Rago v. Nace, 460 A.2d 337, 339 (Pa.Super. 1983).
>
> Felix v. Giuseppe Kitchens & Baths, Inc., 848 A.2d 943, 947 (Pa.Super. 2004). Evidence of a mutual mistake must be shown by evidence that is "clear, precise and convincing." Id. at 948.

Stewart v. Wal-Mart Stores E., LP, 158 A.3d 180 (Pa. Super. Ct. 2016).

The Superior Court has further explained that even oral settlement agreements can be binding:

> [w]here a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement. McDonnell v.

13

<u>Ford Motor Co.</u>, 643 A.2d 1102, 1105 (Pa.Super. 1994).... This is true even if the terms of the agreement are not yet formalized in writing. <u>Mazzella v. Koken</u>, 739 A.2d 531, 536 (Pa. 1999); *see* <u>Commerce Bank/Pennsylvania v. First Union Nat. Bank</u>, 911 A.2d 133, 147 (Pa.Super. 2006) (stating "an agreement is binding if the parties come to a meeting of the minds on all essential terms, even if they expect the agreement to be reduced to writing but that formality does not take place[]"). Pursuant to well-settled Pennsylvania law, oral agreements to settle are enforceable without a writing. <u>Pulcinello[ v. Consolidated Rail Corp.</u>, 784 A.2d 122, 124 (Pa.Super. 2001)] (*citing* <u>Kazanjian v. New England Petroleum Corp.</u>, 480 A.2d 1153, 1157 (Pa.Super. 1984)).

<u>In re Estate of Thomas</u>, No. 522 WDA 2019 (Pa.Super. March 6, 2020).

Moreover,

"There is a strong judicial policy in favor of voluntarily settling lawsuits." <u>Felix</u>, 848 A.2d [ ] at 946 (citation omitted). "The primary reason that settlement is favored is that it expedites the transfer of money into the hands of a complainant. Further, settlement reduces the burden on and expense of maintaining courts." <u>Id.</u> (citations omitted).

In a settlement agreement, "[t]here is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum)." <u>Step Plan Servs.</u>, 12 A.3d at 409 (citation omitted). "As with any contract, it is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject-matter, of the agreement." <u>Mazzella v. Koken</u>, 739 A.2d 531, 536 (Pa. 1999) (internal quotation marks, citation, and brackets omitted).

"If parties agree upon essential terms and intend them to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date. The intent of the parties is a question of fact which must be determined by the factfinder." <u>Compu Forms Control, Inc. v. Altus Grp., Inc.</u>, 574 A.2d 618, 622 (Pa.Super. 1990) (internal quotation marks and citations omitted). "A reviewing court must defer to the findings of the trier of the facts if they are supported by the evidence." <u>Id.</u> (citation omitted).

<u>Swepi, LP v. Wood</u>, 216 A.3d 402 (Pa.Super. 2019).

In the instant matter, Kristina seeks to rescind a valid and binding settlement agreement and prolong this litigation. As noted in <u>Stewart</u> *supra*, absent a clear showing of fraud, duress or mutual mistake, a settlement agreement will not be set aside. As there were no evidence-based

14

allegations of mutual mistake or fraud in the development and production of the Settlement Term Sheet on May 8, 2019, Kristina's only recourse has been to attempt to establish that she was under duress when she proffered her approval of the agreement and provided her signature on all of the requisite documents needed to effectuate the settlement and the ultimate adjudication regarding her father's estate.

We have already noted, however, that Mr. Magee consistently and credibly testified that Kristina was an active and cooperative participant in the settlement conference proceedings which resulted in the approval of the Settlement Term Sheet by all parties. Mr. Magee credibly testified that the settlement agreement addressed all of Kristina's objections, and there was never any coercion to compel Kristina to sign the documents. (*See, e.g.,* N.T. 1/28/20, pp. 10-11, 20-23, 26, 39; N.T. 1/28/20, p. 52.)

As Mr. Magee testified, the two possible outcomes of the settlement conference conducted on May 8, 2019, were that a settlement agreement would be reached which would resolve the matter, or if there were no agreement he would issue a report to the Court with his findings and recommendations as to how to resolve the disputes. (*See, e.g.,* N.T. 9/6/19, p. 76; N.T. 1/28/20, p. 49.) Kristina, as noted above, has argued that she did not understand that distinction. We do not find her argument convincing.

We determined that Kristina was a well-educated, intelligent woman, (*see* N.T. 9/6/19, pp. 52-53; N.T. 1/28/20, pp. 89-90), who understood, or should have understood, that application of her signature to the agreement and all of the accompanying documents effectuating that agreement would, in fact, ratify that agreement and bind her to it. As the Superior Court has observed,

> [i]t is clear that a party's signature to a contract is designed to evidence his or her intention to be bound thereby. Petrie v. Haddock, 119 A.2d 45 (Pa. 1956). Where, as here, the debtor has not alleged fraud, and has produced no evidence to show a lack of capacity to understand the document signed, or that he or she had asked for

15

an explanation of the contract language, the debtor must be held to the contract's terms. Provco Leasing Corp. v. Safin, 402 A.2d 510 (Pa.Super. 1979).

Lyndora Hotel, Inc. v. Koch, 195 A.3d 988 (Pa.Super. 2018) (*citing* Germantown Sav. Bank v. Talacki, 657 A.2d 1285, 1289 (Pa.Super. 1995). In addition,

> Pennsylvania courts have consistently held that one about to sign a contract is duty bound to read it. Leuten Brick Co. v. Killen, 83 A. 576 (Pa. 1912). Failure to read a contract before signing it cannot be used to justify avoidance, modification, or nullification of any part of a contract. In re Estate of Olson, 291 A.2d 95, 97 (Pa. 1972).

Muller v. Aquatic & Fitness Ctr., 120 A.3d 1048 (Pa. Super. 2015).

We noted that Mr. Magee testified, as is apparent by the language of the document, that the finality of the agreement was emphasized. It contained a provision that the parties agreed not to pursue "any lawsuit, claim, investigation or proceeding … to contest, object to, abrogate, set aside or otherwise challenge the validity of any part or all of this settlement term sheet." Despite Kristina's tortured efforts in her examination of Mr. Magee to demonstrate that such language could be interpreted in different ways, it is apparent to this Court that this provision was clear and unambiguous. (*See* N.T. 1/28/20, pp. 34-38.)

We find Kristina's attempts to suggest that her signatures on documents, such as the three (3) $75,000.00 checks, for the three (3) estate beneficiaries (including herself), were conditional upon some undefined future event, to be illogical and unpersuasive. Mr. Magee testified that Kristina agreed to the distribution of those checks willingly, and did not propose any conditions upon which the checks were to be distributed. (*See* N.T. 1/28/20, pp. 42-43.) Moreover, Kristina eventually acknowledged that the checks were dated May 8, 2019, and not some future date, stating that "[t]hey wouldn't be valid if it's on some future – I wouldn't contemplate doing that." (N.T. 1/28/20, p. 135.)

16

Mr. Magee testified that Kristina signed the 2018 fiduciary income tax returns pending her final approval of the returns, but that she had agreed to respond no later than May 22, 2019 if she had any requested revisions to the returns. He stated that Kristina requested the inclusion of Paragraph 6F of the Settlement Agreement, which provided that any additional Estate assets that needed to be liquidated to satisfy agreed-upon payments would be selected by Kristina, and that she willingly signed the Praecipe dated May 8, 2019, withdrawing her objections to the First and Final Accounting. (N.T. 1/28/20, pp.46, 56-57.)

Kristina testified on her own behalf. We permitted her to amend her previously filed New Matter to include claims of coercion or duress. (*See* N.T. 1/28/20, pp. 66, 74-75, 80-81.) A thorough review of the transcripts of November 28, 2018, September 6, 2019, and January 28, 2020 demonstrates that Kristina was given ample opportunity to be heard and re-heard as to every issue which was relevant to her multiple complaints about her brothers' roles in administering their father's estate and with regard to the Master's role in facilitating a written Settlement agreement. She was given free reign to testify as to whether or not her assent to the May 8, 2019 Settlement Agreement was the product of duress, or was knowing, intelligent, and voluntary.

Kristina testified that she arrived at the settlement conference without an attorney because although she "contacted 20 or so places," the previous attorneys she had contacted were "not responsive to the issues she raised" and "charged her for not doing useful things." She stated that she arrived on crutches "with all the documentary evidence I had in a heavy suitcase," and felt that "once there I couldn't leave …because of the legal constraints that anybody would face," and because she couldn't physically get herself out the door with her belongings, which induced a "sense of vulnerability" that was only increased by the behavior of the attorneys. She observed that the other participants "weren't nasty [or] yelling," but "treated her like an object," and so she

17

therefore just tried to move the May 8, 2019 meeting along and "get the issues elucidated ...

[which] is appealable." She stated that no one physically threatened her but the "situation itself

was very coercive." She claimed that she asked the Master for a draft ahead of time should there

be an agreement, but that didn't happen, and so she signed the Agreement in order to avoid

"end[ing] up doing the same exercise again for another day." (N.T. 1/28/20, pp. 82-86.)

Upon examination by this Court, Kristina stated that she was 62 years old. She received an

Engineering degree from the University of Pennsylvania in 1980, and returned to school for

Clinical Psychology in 1986, eventually receiving a doctorate in Organizational Behavior from

Cornell University in 2003. She testified that she was on crutches because she can't support weight

on one of her feet because her "body is forced off balance by dental issues" which a "physician

wouldn't cure." (N.T. 1/28/20, pp. 87-90.)

Kristina stated that she came to the settlement conference voluntarily, but was prevented

from leaving by the Master due to his "legal authority" and "because he had control of the

meeting." She claimed that he failed to listen to her concerns, but then she admitted "they were in

the settlement agreement by topic, [but] not by what to do about it." She admitted that no one

"stood there and yelled at me to say sign this document," but tried to suggest that she signed the

agreement because of the coercive circumstances of the situation, explaining that "you do as you're

told when you're asked to do something by a legal authority." (N.T. 1/28/20, pp. 90- 94.)

Upon cross-examination by Mr. Terebelo, counsel for Steven, Kristina stated she was

"sometimes" intimidated by him, but nevertheless refused to consent to the Petition for hearing

when he called her seeking her consent. She indicated she was not intimidated by Ms. Cassel-

Brophy, counsel for Andrea, and tacitly acknowledged denying Ms. Cassel-Brophy's request for

Andrea to appear by telephone at the January 28, 2020 hearing because of Andrea's health

18

condition. When asked by Mr. Terebelo if he had ever yelled at her, Kristina replied "considerably," but then was unable to recall if it was him or his associate, Mr. Hiscott, whom she claimed had done so. She acknowledged her signature on the Settlement Term Sheet, and that the Agreement did not contain any provision permitting her to renounce the settlement term sheet, but claimed that she "took it for granted that I could appeal it." She also acknowledged that the Praecipe withdrawing her Objections did not contain any provision for her to renounce it after she had signed it.[4] (N.T. 1/28/20, pp. 96-100, 106-108, 114-115.)

Ms. Cassel-Brophy testified that the settlement conference of May 8, 2019, was, contrary to Kristina's allegations, conducted in a cordial manner. She stated that Kristina did not appear to be intimidated or coerced in any way, and Kristina was an active and willing participant in the settlement proceedings. (N.T. 1/28/20, pp. 142-147.)

Finally, Mr. Hiscott testified that he conferred with Kristina during the settlement conference for the purpose of identifying the securities or assets to be liquidated to raise the cash for the $75,000.00 checks and for payment of Estate legal fees and commissions. He characterized his relationship with Kristina during that time as non-adversarial, in that they all shared the goal of minimizing capital gains taxes in the sale of the assets. He also stated that Kristina had agreed to be responsible for identifying the assets to be liquidated. (N.T. 1/28/20, pp. 154-158.)

---

[4] Per this Court's Decree appointing Mr. Magee as Master, It was apparent that any of the parties had the right to "appeal" the Master's recommendations as to adjudication of objections or related issues. This right to appeal the Master's recommendations in his written report are not applicable to the settlement agreement which the Master facilitated on May 8, 2019. As to the agreement, Kristina's appellate rights are limited to a challenge to the enforceability of the settlement agreement.

The Master only issued his Master's Report of June 4, 2019, (almost four (4) weeks after execution of the Settlement Agreement by the parties) in the event the Settlement Agreement were later determined by the Court to be unenforceable. The specific terms of the settlement contract are not, and should not, be open to relitigation at the Orphan's Court level, so long as the contract is found to be binding and therefore enforceable.

19

Based upon the foregoing, this Court had no hesitation in concluding that the parties entered into a valid and binding contract when they signed the Settlement Term Sheet on May 8, 2019. Whereas we found Kristina's testimony to be either contradictory or not credible or both, we found the testimony of Mr. Magee, Ms. Cassel-Brophy and Mr. Hiscott to be completely consistent, logical and credible. At the conclusion of the January 28, 2020 hearing, we stated that

> ...the petitioner has met (his) burden of proof with regard to the petition to enforce, really, by preponderance of the evidence certainly, but by clear and convincing evidence, quite frankly; that the settlement agreement was entered into by Kristina Szafara knowingly, intelligently and voluntarily, without duress, be it physical or psychological.
>
> Ms. Szafara is, as we have heard, very well educated, articulate, able to understand the English language, participated in an atmosphere of collaboration during the discussions on May 8, 2019 with the Master. Certainly the Master did not coerce the settlement in any way.
>
> So the settlement is indeed a binding contract, and this Court so finds that all the elements of a binding contract have been demonstrated to the Court's satisfaction. Accordingly, the petition to enforce is granted.

(N.T. 1/28/20, pp. 164-165.)

After discussions with the parties, this Court then directed that Kristina was to be removed as co-executor of the Estate, and we appointed Steven as sole executor, with the objectives of protecting the Estate assets, administering the Estate in an orderly and equitable manner, and achieving finality in this protracted litigation. Our final disposition of the matter was reduced to writing in our February 4, 2020 Order.

20

# V. CONCLUSION

For all of the reasons set forth above, we find no merit in Kristina's appeal of our February 4, 2020 Order. Accordingly, we respectfully submit that her appeal should be denied and dismissed, and our Order of February 4, 2020 should be affirmed.

BY THE COURT:

5/19/2020
Date

GARY B. GILMAN,        J.

N.B.    It is your responsibility to notify all interested parties of the above action.

21

Copies sent to:

Thomas O. Hiscott, Esquire
Bradley D. Terebelo, Esquire
HECKSCHER TEILLON TERRILL & SAGER
100 Four Falls, Suite 300
West Conshohocken, PA 19428

Tracy L. Cassel-Brophy, Esquire
MARTYE AND TOADVINE
344 South Bellevue Avenue
Langhorne, PA 19047-2840

Kristina Szafara
1539 Pine Valley Boulevard, Apt. #104
Ann Arbor, MI 48104

Editor
Fiduciary Reporter
60 East Penn Street
Norristown, PA 19404

Bucks County Law Reporter

Bucks County Law Library



County of Bucks, SS
I, do hereby certify that the above
and foregoing is a true and correct copy of

in the within entitled case as the same
remains on file in the Orphans' Court
Witness my hand and the seal of said Court
On this ___ day of ___,

___ Clerk

22



# LINDA BOBRIN, ESQUIRE

### Register of Wills and Clerk of the Orphans' Court
### Administration Building, 55 E. Court Street, Doylestown, PA 18901
### Email: registerofwills@buckscounty.org

*Douglas Wayne, Esquire, First Deputy*
*Colleen F. Strunk, Second Deputy*
*Melissa V. Bond, Solicitor*

*Telephone:  (215) 348-6265*
*(888) 942-8257*

---

June 5, 2020

Superior Court of Pennsylvania
Office of the Prothonotary
530 Walnut Street, Suite 315
Philadelphia, PA  19106

Re:  Estate of Casimir J. Szafara, Deceased
     Bucks County Orphans' Court No.:  2017-E0254

                    1256 EDA  2020

Good Afternoon,

     Enclosed please find a certified copy of the Opinion recently entered by the Honorable Gary B. Gilman in the above-captioned Bucks County action.

     As expected, due to Covid-19 shutdown of our courts, our office has not received a docketing statement or any communication from your office.  However, in an abundance of caution, I wanted your office to receive a copy of the opinion as a notice of appeal was filed in this case during the shutdown.

     I will await receipt of a docketing statement or further direction from your office.

                                        Very truly yours,

                                        COLLEEN F. STRUNK

/cfs
Enclosure